Gould v. Horner.

GOULD *vs.* HORNER and others.

A pleading which sets up usury, either as a ground of defense or as a substantive cause of action, must set it up in clear and distinct terms; and the terms of the usurious contract, and the *quantum* of the usurious interest or premium, must be specified, and distinctly and correctly set out.

Where, in an action upon a promissory note, the answer alledged that "said note was usurious in its inception," and that the payee knew it was "executed fraudulently and *to sell* usuriously above the rate of seven per cent

per annum, to wit, one and a half per cent a month;" *Held*, that this was
not a sufficient allegation of usury to allow evidence to be given of it.

Where a partnership was, by its terms, to expire on the 1st of May, but was
continued afterwards, by consent, until June 17, when it expired by notice
of dissolution published on that day; *Held*, that a note executed by one of
the partners, on the 9th of June, in the name of the partnership, was bind-
ing on the firm.

THIS was an action on a promissory note, purporting to be
made by the defendants Horner & Ibbotson, who were partners,
on the 9th day of June, 1848, in the name of the copartnership
(Ibbotson & Horner,) payable to the order of Joseph F. Darling,
sixty days after date, for $724,66. The action was brought
against both makers, and Darling, the payee and indorser; but
Horner was the only defendant served with process. The plain-
tiff obtained a verdict for the amount of the note, and interest,
and judgment was entered thereon. The facts proved on the
trial, and the legal questions arising thereon, and upon the
pleadings, are stated in the opinion of the court.

*C. Tracy*, for the plaintiff.

*Wm. Curtis Noyes*, for the defendant Horner.

*By the Court*, MITCHELL, J. One defense intended to be
raised in this case was that the note in question was usurious in
its origin. The rule is established, that "any pleading which
sets up usury, either as a ground of defense, or a substantive
cause of action, shall set it up in clear and distinct terms; and
the terms of the usurious contract and the *quantum* of the usu-
rious interest or premium must be specified and distinctly and
correctly set out." And it is added that "it is reasonable that
strictness should be required in this, inasmuch as the effect of
such pleading, if sustained, is to set aside the entire contract,
and to deprive the party lending the money of even the money
lent." See *Cole* v. *Savage*, (*Clarke's Ch. Rep.* 362,) where
these rules were applied on a bill seeking an injunction to pre-
vent a sale by advertisement of mortgaged premises, on a charge

of usury. The injunction was refused, for the deficiency in the allegations in the complaint. This was holding that the complaint did not sufficiently alledge usury for the court to notice it ; and it follows, as the proofs are to be according to the allegations, and not beyond them, that under such allegations no proof of usury could be given ; because if the proof made out a case of usury, it went beyond what the plaintiff had alledged, and what the defendant could be expected to be prepared to meet.

In *Vroom* v. *Ditmas*, (4 *Paige*, 526,) the chancellor laid down the same rule, substantially, when, in speaking of the manner in which usury must be pleaded, to *allow it to be given in evidence*, he said that " the defense must be distinctly set up in the plea or answer, and the terms of the usurious contract, and the quantum of the usurious interest or premium, must be specified and distinctly and correctly set out. The defendant must also prove the usury as laid." And there the chancellor held the variance in the proof, from the allegations, fatal to the defense. In the *New Orleans Gas Light and Banking Company* v. *Dudley*, (8 *Paige*, 457,) the chancellor said, " the defense of usury was not set up with sufficient certainty to entitle the defendant to an issue upon that point, or *to authorize him to give evidence of usury, at the hearing*. There the answer alledged a corrupt and usurious agreement by which the lenders bargained to receive a greater interest than seven per cent, either by a pretended sale or in some other way. (*See also Curtis* v. *Masten*, 11 *Paige*, 17 ; *Cloyes* v. *Thayer*, 3 *Hill*, 565, 566 ; *Rowe* v. *Phillips*, 2 *Sandf. Ch. Rep.* 15.)

In this case the answer merely alledges " that said note was usurious in its inception," and that the payee " knew it was executed fraudulently," and *to sell* usuriously above the rate of seven per cent per annum, to wit, one and a half per cent a month." It thus, in the latter part, alledges an intention *to sell* the note at one and a half per cent a month ; but it would be consistent with this allegation that the maker should receive the face of the note, and the payee sell it at one and a half per cent a month, which he lawfully might do. And even if it was

made for the maker *to sell*, at that rate, it does not alledge that he did so sell it. There was not, therefore, a sufficient allegation of usury to allow evidence of it to be given.

It was said that the plaintiff should have objected to the answer as uncertain and indefinite. It was answered properly that the pleadings were in the year 1848, when the code contained no such power, (*see* § 137, *now* 160;) and that it was not irrelevant, for it related to the matter in controversy. It was not redundant, but on the contrary was defective.

The defendant also intended to set up a defense that the note was given by his former partner, fraudulently, after the dissolution of the partnership, and without consideration. As to the dissolution, the answer alledged that the partnership expired by limitation on the 1st of May, 1848, and by dissolution published on the 17th of June, 1848. It is perfectly consistent with this, that by the terms of the partnership it was to expire on the 1st of May, 1848, but was continued afterwards by consent, and then expired on the 17th of June, 1848, by notice of dissolution published on that day.(*a*) The defendant would not, in his answer, swear that the partnership expired on the 1st of May, 1848, but qualified this by saying that it expired by limitation, on that day, and that the time for its expiring was continued to another period, when it expired by dissolution, and notice thereof published, viz. June 17, 1848. This also appears to have been the actual intention of the pleader; for he denies that the defendant made the note on the 9th of June, 1848, or on any day before the 17th of June, 1848.

Ibbotson, the partner, also showed that he and Horner were partners until June 17th, 1848, when the firm was dissolved, and notice published in the Courier and Enquirer. The payee proved that he received the note on the 9th of June, 1848, the day of its date, and gave cash for it, and that he transferred it to the plaintiff and received in cash the face of the note, less

---

(*a*) Where a partnership for a term is dissolved by effluxion of time, and afterwards the partners continue the business as usual, without any new agreement, the latter partnership is a partnership at will. (*Coll. on Part.* § 214, *Perk. ed. Featherstonhaugh* v. *Fenwick*, 17 *Ves.* 298.)

interest not then accrued, on the day before the note fell due. The defendant also examined the plaintiff, who confirmed this testimony. This showed that the note was given during the continuance of the partnership, and was received by the plaintiff for a full and valuable consideration, before it fell due. This made it immaterial, as against this plaintiff, what the consideration of the note was. The proof was clear that the note was given before the 17th of June, 1848, and that the partnership was not dissolved until then.

The judgment for the plaintiff is affirmed, with costs.

[NEW-YORK GENERAL TERM, February 2, 1852. *Edmonds, Edwards* and *Mitchell*, Justices.