NEWMAN et al. *vs.* KERSHAW.

10 333
74 333)
10 333
109 481

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard October 26, 1859.]                    [Decided January 4, 1860.

*Usury—Amendments—Contracts.*

In pleading usury the rule is well settled, that the facts must be set forth with certainty, so that the court can see that they amount to usury, and what was the amount of the usurious interest.

A defect in stating the facts of usury, should, as a general thing, under the code, be reached by a motion to make the pleading more definite; and not by a demurrer to the plea.

The rule in regard to pleading usury is so strict, that defects in regard to certainty are to be held matters of substance; and no evidence can be given under a pleading containing only general allegations of usury.

There is no doubt of the power and duty of courts to allow amendments to pleadings in furtherance of justice, and upon such terms as may be proper; and under this power of the court, a defense of usury may be amended. But whether in such case it might not be "a furtherance of justice" to require the party to pay the principal sum loaned, as a condition of amendment. Quere?

Under the general rule that contracts are to be governed by the law of the place of performance, it is held that a contract for the payment of money, made in one state, where the interest reserved would be illegal, is still valid, if it is payable in another state, where the interest is legal, there being no intent to evade the laws of the state where the contract was made; so contracts have been held illegal, although valid by the law of the state where made, if payable in a state where they would be void for usury.

A contract made in a state where it is valid, but which is to be performed in another, where it would be invalid, must depend for its validity on the decision of the question of the laws of which of these states shall govern the contract, and this should be determined by the intention of the parties, gathered from the whole transaction, rather than from the fact in which of the states the security for the performance of the contract shall lie; though the location may have an influence in determining what that intention actually is.

The place of payment may, in the absence of any more controlling circumstances be sufficient to show that the parties intended to refer the contract to the law of that place; but if the loan was actually made in another state, the money to be used, the parties residing, and the security given there, and if by the law of that state, the contract would be valid, but invalid by the law

Newman et al. vs. Kershaw.

of the place of payment, these facts may well be held to have a stronger influence in showing the intention, than the mere place of payment; and where the intention is rebutted, the rule should cease.

The case of *Platt vs. Robinson, supra* 128, considered and approved.

The case of *Fisher et al. vs. Otis*, 3 Chand., 83, considered and defined.

The mere writing, by which the repayment of a loan is secured, does not always evidence the whole of a contract, or transaction between the parties, and therefore does not disclose the entire place of performance, or whether the contract be valid or not; thus on a contract to loan, *the lender performs his part in one state, and the place of payment is in another, the place of the performance being partly in one state and partly in another, then the laws of the first state would be applicable, and the contract be held valid ; whereas, if the loan were made in the latter state, the money used and to be repaid there with usurious interest, it would be invalid.

A subsequent purchaser of real property is entitled to avoid a prior incumbrance, by mortgage, on the ground of usury in the making thereof; as where the defendant to an action to foreclose a mortgage, as subsequent purchaser set forth that he purchased the property with the information from the grantor of the usurious character of the prior mortgage, and relied on being able to avoid it for that reason; that he had also given the grantor a mortgage for a part of the consideration money : Held, that he might might make that defense.

Upon a defense of usury, it is not necessary to allege a tender of the principal loaned in the pleading, before the party should have the benefit of the plea, nor was the want of such an allegation a ground of demurrer.

The provision of the statute of Wisconsin, requiring the party who relies upon the defense of usury to avoid the payment of interest, to prove that he had tendered the principal sum loaned, before he shall receive any advantage of such defense, was designed only to regulate the effect and validity of contracts made under it, and not of those made under the laws of another state; thus they are not applicable to a contract made in the state of New York, and to which the laws of that state apply.

The *lex fori*, which applies to the remedy upon contracts, is not to be extended so as to make a contract void for usury in one state valid in another, where it is sought to be enforced upon the security.

If a defendant in an action to foreclose a mortgage on land in this state, sets up a good defense of usury under the laws of New York, and is able to sustain it without the affirmative aid of a court of equity, there being no law requiring him to pay the principal, he is not bound to make an offer to pay before he can have the benefit of the defense.

Whether a party can be examined for the purpose of eliciting facts to enable the opposite party to plead usury ; and whether if he can, an application for such an examination, is such a resort for affirmative relief to a court of equity, as under the law, as it now exists, of authority to examine parties as witnesses, requires the payment of the principal sum loaned. Quere.

This was an action brought by William H. Newman and Edward Franks against John Kershaw, impleaded with Theodore Perry, and several others, to foreclose a mortgage upon premises situated in the State of Wisconsin, and which was executed and delivered by Perry to them, within the state of New York, to secure a bond for $20,000, with interest at seven per cent. Kershaw alone answered the complaint, and averred that he was a subsequent purchaser of the mortgaged premises, for the consideration of $33,000; that he bought the premises, believing the mortgage to be void, because of usury in making the bond and mortgage. The usury was set forth to the effect, that the defendant was informed and believed, &c., that heretofore, at various times during the winter of 1855, and the spring and summer of 1856, at the city, county, and state of New York, it was corruptly, and against the form of the statute of the state of New York, in such case made and provided, agreed by and between William H. Newman, and Edward Franks, and Theodore Perry, that Newman and Franks should lend and advance to Perry large sums of money, to the amount of twenty thousand dollars, and that Perry should pay to Newman and Franks, and they should receive interest upon such loans, and for the use and forbearance of said sums of money, at and after a rate greater than the rate of seven dollars upon one hundred dollars for one year, to-wit : at and after the rate of seven dollars upon one hundred dollars for one year, and the further sum of two dollars and fifty cents upon one hundred dollars for alleged commissions, to be paid by Perry to Newman and Franks for such loans and advances ; and which moneys, so to be loaned and advanced, this defendant is informed and believes, and states on his information and belief, were the moneys of Newman and Franks, and the additional two dollars and fifty cents on the one hundred dollars, so agreed to be paid and received as commissions, in fact, was for the use and forbearance of the moneys of Newman and Franks, and above the interest at the rate of seven dollars on the one hundred dollars. That the loans were made to the amount of $20,000, but the dates of the loans, the amounts, and the periods of forbearance, he could not state more particularly, and he prayed the examination of the plaintiffs in reference thereto. The answer then set forth the statute of New York at length, and averred that the contract was void under the statutes of that

state. To this answer the plaintiff filed a general demurrer; which was sustained, and from that order the defendant took this appeal.

*Crooks, Wells & Brigham,* for the respondent.

1. The answer does not state facts sufficient to constitute the defence of usury. A party setting up the defence of usury must aver clearly every particular necessary to establish the usury charged. The usury must be set up in distinct terms. The terms of the contract, and the *quantum* of the usurious interest, must be specified and distinctly set out. *Cloves vs. Thayer,* 3 Hill, 566; *New Orleans G. L. & B. Co. vs. Dudley,* 8 Paige, 457; *Curtis vs. Martin,* 11 Paige, 17; *Fay vs. Grimsted,* 10 Barb., (S. C.,) 321; *Gould vs. Horner,* 12 Barb., (S. C.,) 601; *Rowe vs. Phillips,* 2 Sand. Ch. 15; *Banks vs. Van Antwerp,* 5 Abbott's R., 411; *Morris vs. Satterley,* 6 id., 74; 1 Saunders, 295, note 1; 5 Leigh's R., 69; 8 Leigh's R., 330.

But the appellant seems to admit the insufficiency of his answer as a defence of usury, and prays the examination of the respondents. This we suppose to be a prayer for discovery, and we suppose it to be bad pleading under the Code. § 291. If a discovery can be sought in this manner, the law of N. Y., on which the appellant relies, provides that, except in the case of a borrower, it can be had only on payment of the sum justly due. The appellant is not a borrower within the meaning of that statute. *Post vs. Pres't Bk. of Utica,* 7 Hill, 393; *Bronson, J., in Vilas et al., vs. Jones et al.,* 1 Comst., 278; *Rexford et al., vs. Widger,* 2 Comst., 131; *Curtis vs. Leavitt,* 15 N. Y. Rep., 107, 108.

2. The appellant here is a grantee of the mortgagor, and he cannot plead usury in the transaction between the original parties, as his defence to this foreclosure, especially when the mortgagor expressly refuses to set it up. It is a personal defence. *Sands vs. Church,* 2 Seld., 35; *DeWolf vs. Johnson,* 10 Wheat., 392; *Reading vs. Weston,* 7 Conn., 413; *Wells vs. Chapman,* 13 Barb., 561; *James vs. Oakley,* 1 Abb., 324; *Farm. and Mech. Bk. vs. K.,* 1 Mann., 84.

3. If the usury is well pleaded, and by a proper party, this mortgage is not usurious. The mortgage is on Wisconsin lands, and the contract is governed by our laws, under which it is not usurious. *Chapman vs. Robertson,* 6 Paige, 627. Although the mere fact that the mortgage is upon Wisconsin lands, may not of itself be sufficient to make this a Wis-

consin contract, still, if by its terms the contract would be bad in New York, while it would be good in Wisconsin, " that circumstance alone commonly affords a conclusive test." The contract will be so construed as to make it good, and not bad. *Comstock, J., in Curtis vs. Leavitt*, 15 N. Y., 87; *Turpin vs. Powall*, 8 Leigh, 93.

4. If this mortgage is usurious, and if the appellant here can make that defence, still he must bring himself within the Wisconsin rule when he pleads in a Wisconsin court. He must aver a tender of the principal, or our courts cannot listen to his defence. Laws of 1856, page 66, § 2. The *lex fori*, not the *lex loci*, must govern as to the mode of enforcing or avoiding a contract. 1 Chitty Pl., 15, Note 1; 2 Kent's Com., 458; 8 Leigh, 112.

*Emmons, Van Dyke & Hamilton*, for the appellant.

1. The usury is sufficiently pleaded; and if not, when the plaintiff shall have made the discovery asked for, it may be amended. Code, § 291; id., § 77, *et seq.; Catlin vs. Gunter*, 1 Kern., 368, S. Ct.; *Duel vs. Spence*, 1 Abbott's Pr. R., 237; *Banks vs. Van Antwerp*, 5 Abbott, 411; *Smith vs. Nichols*, 8 Leigh, 330; *Freeman vs. Brown*, 7 Mon., 263.

The right of a defendant to a suit in equity to interpose this defence without offering " *to do equity*," is clearly stated, and the difference of his position, and that when he might be complainant, explained. *Post vs. Dart*, 8 Paige, 639; *Livingston vs. Harris*, 3 Paige, 532.

The point presented for the decision of the Court is, then, whether any party but the borrower can interpose this defence, the statute declaring the contract void. *Shufelt vs. Shufelt*, 9 Paige, 145; *Dix vs. Van Wyck*, 2 Hill, 525; *Pearsall vs. Kingsland*, 4 Ed. Ch., 195; *Sands vs. Church*, 2 Seld., 347; *Jackson vs. Henry*, 10 J. R., 185; *Brooks vs. Avery*, 4 Comst., 225. From the foregoing cases, in the absence of authorities to the contrary, and none can be found, it is apparent that in the courts of the state of New York the defendant can avail himself of the plea of usury.

The same doctrine is held in England, *Mansfield vs. Ogle*, 31 Eng. L. & Eq., 357; in Massachusetts, *Green vs. Kemp*, 13 Mass., 518; by the Supreme Court of the United States, *Loyd vs. Scott*, 4 Pet., 205; in New Jersey, *Brolasky vs. Miller*, 1 Stockt., 807; in Maryland, *Niff vs. Blizzard et al.*, 6 Gill & Johns., 18.

Vol. X.                    22

It may be contended that this mortgage, not being usurious by the laws of the state of Wisconsin, is to be governed by the *lex rei sitæ*. This case does not come within the principle announced in *Chapman vs. Robertson*, 6 Paige, 627, the mortgage in that case having been executed in the state where the property was situated, and not where the contract was initiated. In this case, the contracts were made and the mortgage executed in the state of New York, by the laws of which state it is void, and comes within the rule that being void at the place of its inception, it is void everywhere. *Houghton vs. Page*, 2 N. H., 42.

*By the Court*, PAINE, J. The authorities cited by the respondent fully establish that the defense of usury is not sufficiently alleged in the answer of the appellant. The rule is well settled, that the facts must be set forth with certainty, so that the court can see that they amount to usury, and what was the amount of the usurious interest. But, although it was not raised by counsel, the question has occurred to us whether, under the present system of practice, a defect in this respect is to be reached by demurrer, or whether the only remedy is by motion to make the pleading more definite and certain. As a general rule, the latter is undoubtedly the only course. But the question is whether the rule in regard to alleging usury is so strict, that defects in respect to certainty should be held matters of substance, to be reached by a demurrer. It was frequently held, under the old system, that no evidence could be given under a pleading containing only general allegations of usury; 8 Paige, 458–9; and the chancellor there intimates that it is matter of " substance." We have found no case since the adoption of the code alluding to the point, except that of *Gould vs. Horner*, 12 Barb., 601, in which the answer was held defective in this particular. It was claimed that the opposite party should have objected to it, as " uncertain and indefinite ;" but the court held that be-

cause the pleadings were put in before this power of moving to make pleadings more definite and certain, had been adopted in the code, therefore the party was not bound to resort to that; implying that if the pleading had been put in after this provision, he would have been. But without determining whether if the only defect was a mere want of particularity, it could be reached by demurrer, we think the demurrer must be sustained here, for the reason that the answer itself alleges that under its alleged usurious agreement, the sum of $20,000 was actually advanced by the respondents. The mortgage being for that exact sum, and drawing only legal interest, this allegation would seem itself to refute the general allegation of usury, and render the pleading defective in substance.

But it was assumed by the counsel for the appellant, that the answer may be amended; and the right was said to have been conceded by the other side, in the court below. In support of the right, the case of *Catlin vs. Gunter*, 1 Kern., 368, is referred to. The court there held, that where an immaterial variance occurred between the facts proved, and those alleged in the answer setting up usury, it should be disregarded, under the positive provisions of the code. But they state that previously the law would have been otherwise, and they expressly distinguish the case from one where the party was asking some " indulgence" from the court. In the subsequent case of *Gasper vs. Adams*, 24 Barb., 287, it was held that a party could not amend a defence of usury after judgment on a report of referee, without consenting to let the judgment stand for the amount actually due. We have no doubt of the power and duty of the court to allow an amendment of any pleading " in furtherance of justice, and upon such terms as may be proper;" but where a defense of usury is sought to be amended, there may be a question whether it is not " in furtherance of justice," to require the party asking

it, to submit to the payment of what is justly due. We have felt it necessary to pass upon the question whether the answer may be amended, because if it could not, having decided that the demurrer must be sustained, it would be unnecessary to determine any of the other questions made on the argument.

Holding that it may be amended, we will proceed to determine them. And, in the first place, we have no doubt that this contract is to be governed by the laws of New York. The general rule that contracts are to be governed by the law of the place of performance, is too well settled to require the citation of authorities. Under this, it has frequently been held that contracts for the payment of money, made in a state where the interest reserved would be illegal, are still valid, if it is payable in another state, where the interest is legal, there having been no intent to evade the laws of the state where the contract was made. And on the other hand, such contracts have been held illegal, although perfectly valid by the law of the state where made, if payable in a state where they would be void for usury. The authorities upon the subject are referred to in Story's Conflict of Laws, and the whole subject very fully discussed from sec. 280 to sec. 320.

But there are some cases which hold that a contract made in a state where it is valid, but to be performed in another, where it would be invalid, may after all be held valid by referring it to the law of the state where made. The case of *De Pean vs. Humphreys*, 20 Martin L. R., 1, and *Chapman vs. Robertson*, 6 Paige, 627, are the leading authorities in favor of this position. And the same view is supported with much force in the opinion of this court, in the case of *Fisher et al. vs. Otis et al.*, 3 Chand., 83. Whichever way this question may be finally settled, I think it must depend on which law is held applicable to the contract itself, and not merely on the question whether the security, if considered alone, would be valid by the law of the state where the lands lie. I think

there is great force in the position of Judge Hubbell, that the principles of law upon this subject are based upon the presumed intention of the parties. And this being so, the fact that security is given upon lands in a state where the contract would be valid, may perhaps have much influence in determining what that intention was. But if this circumstance alone, or in connection with the fact that the money may have been actually loaned, and the whole contract executed in the state where the lands lie, though the money is to be repaid in another, shall be held sufficient to show that the parties intended to be governed by the law of the state where they acted, then that law should be held to govern the contract, not only there, but everywhere. If a loan is made here and a note given payable in New York, and security given on lands here, and those facts should be held by our courts sufficient to make our law applicable to the contract, then they should have the same effect in a suit on the note in New York, and it should be sustained there, even though invalid if governed by their law. The rule upon this point should be uniform and certain, and the same law applied to the contract everywhere, and not one law in one place and another in a different place. Justice Story in his work before cited, thinks the case of *Chapman vs. Robertson*, cannot be sustained upon the grounds upon which it was placed by the chancellor. If it was intended in that case to decide that the security could be enforced in New York merely because the lands were there, while conceding that the law of England was properly applicable to the contract, to which the security was incident, and made it void, then I do not see how it can be sustained. But I do not so understand the decision. On the contrary, I understand the chancellor to rely on the facts that the mortgage was actually executed in that state, upon lands there situated, and that the mortgagor resided there, the mortgage itself also containing a covenant for the payment of the money, which

is treated as the principal contract, and that the money was to be used by the borrower in that state, to show that the contract itself was taken out of the general rule, as to the place of performance, and should be governed by the laws of New York. I understand him to assert distinctly that it should be enforced in the English courts if suit had been brought on it there, notwithstanding, if governed by their law, it would have been void. And with this view I think its principle may be sustained. It does not attempt to hold one law applicable to the security, while conceding that another is applicable to the contract; but relies on the facts mentioned, to take the contract itself out of the rule that the law of the place of payment must govern. And I am not prepared to say that such facts do not furnish solid grounds for making the exception. The place of payment may, in the absence of any more controlling circumstances, be sufficient to show that the parties intended to refer their contract to the law of that place. But if the loan was actually made in another state, the money to be used there, the parties residing there, the security given there, and if by that law the contract would be valid, and it would be invalid by the law of the place of payment, these facts may well be held to have a stronger influence in showing the intention, than the mere place of payment, and the rule itself resting upon that intention, where the intention is rebutted the rule should cease.

This view is taken in a recent well reasoned opinion, by Justice Gholson, recently elected to the supreme bench of Ohio, but then judge of the superior court of Cincinnati. It was in the case of *Atwater vs. Rœlofson et al.*, reported in 4 Am. Law Reg., 549. A loan was made in Cincinnati, and notes given, payable in New York. They bore ten per cent. interest, valid by the law of Ohio, but invalid by the law of New York. Security was also given on lands in Cincinnati. The court held the contract governed by the law of Ohio.

And in examining the question upon principle, some important suggestions are made, which I have not seen elsewhere. They were, 1, that the use of money is worth more in some states than in others; that the laws of each state fixing the amount of interest that may be taken, should be held to determine the value in that state, and that therefore when a loan is made in a state to be used there, and the interest reserved is legal there, the law of that state should determine its validity, even though, for their convenience, the parties have made it repayable elsewhere. Another suggestion is, that the mere writing by which the repayment of a loan is secured, does not evidence the whole contract or transaction between the parties, and therefore does not disclose the entire place of performance. Thus, in that case, the contract was to loan, and the lender performed his part of it in Ohio; so that the place of performance was partly there and partly in New York. And upon these grounds the court held the law of Ohio applicable. But it is expressly conceded that if the contract had been made in Ohio, for a loan to be made in New York, the money to be used there, and to be repaid there, with interest at ten per cent., it would have been invalid. It was said that such a contract would stand on the same footing as one executed wholly in New York.

I have thus referred to these cases which establish the only exception to the general rule, that the law of the place of payment is to govern, to show that none of them sustain the position, that where a loan is made between parties residing in one state, the money to be used there and repaid there, the mere giving of security upon lands in another state, can withdraw the contract from the operation of the laws of the state where made. The case of *De Wolf vs. Johnson*, 10 Wheat., cited by the respondent, holds expressly that it cannot. And if it cannot withdraw the contract, we know of no case showing that the security which was merely incident to the debt,

should be enforced by the courts of the state where the land was situated, while conceding the debt itself to be void. And we do not think such a position can be sustained upon principle.

In this case the parties all resided in New York, the loan was made there, the money used there, and to be repaid there, and the laws of that state must govern the contract as to its validity and effect.

But the further question is made whether the appellant, being a subsequent purchaser of the property, is entitled to avoid the prior incumbrance on the ground of usury. It was discussed on both sides, as though this should be determined by the established rule on that subject in New York, if indeed any rule is established. The respondents claim that according to the New York decisions, and the decisions of other courts, such subsequent purchaser cannot take advantage of usury in a prior mortgage. The appellant claims that this rule includes only purchasers of the equity of redemption merely, who buy subject to the incumbrance, and does not extend to those who buy the property itself, with a view to avoid the incumbrance. After carefully examining the cases cited, we have come to the conclusion that the latter is the true rule.

We shall not attempt a review of the numerous cases on the subject, but it is expressly held that a purchaser generally from the mortgagor, and not of the equity of redemption merely, may avail himself of usury in a prior mortgage, in *Brooks vs. Avery*, 4 Com., 229. And we think there is nothing in the subsequent case of *Sands vs. Church*, 2 Seld., 347, or in any of the other cases cited, where subsequent purchasers were prohibited from setting up this defense, in conflict with this decision. They were cases where the purchaser had bought the equity of redemption merely. And the very grounds upon which they were excluded, imply that one who

purchases generally, and not subject to the prior incumbrance, would not be excluded. They say, *first,* that the debtor can waive the forfeiture if he sees fit; and if he sells, subject to the incumbrance, that affirms it, and amounts to a waiver They say again, that where the purchaser buys subject to it, he thereby agrees that it shall be paid out of the property, and cannot afterwards be heard to object to it, and upon this, and not on the personal character of the defense, the judge rested his opinion in *Sands vs. Church.* They say, further, that to allow such a purchaser to set up this defense would not benefit the borrower, but would only transfer the money from the pocket of the lender to that of the purchaser. None of these reasons exist in case of a purchaser, not subject to the incumbrance. There the grantor does not waive by selling subject to it, but by selling generally, as though the incumbrance was void, clearly insists on the forfeiture. The purchaser does not recognize it. And maintaining this right on the part of such a purchaser. *is* benefiting the borrower, because it enables him to sell his property and treat the incumbrance as void, as the statute declares it. To hold otherwise would, as the chancellor suggests, in *Shufelt vs. Shufelt,* 9 Paige, 145, leave the property "to a certain extent inalienable in his hands."

The answer here sets forth a purchase of the property generally, and that the defendant was informed by the grantor of the usurious character of the prior mortgage, and relied on being able to avoid it. It also avers that he gave a mortgage of $9,000 for part of the purchase money, to which amount the mortgagor is still interested. We must hold, therefore, that the defendant is entitled to avail himself of the defense of usury against this mortgage, if usury existed.

The only other question discussed was, whether it was necessary for the appellant to offer to pay the principal sum loaned. The respondent's counsel contended that such offer

was nessary under section 6, chap. 61, R. S., 1858, which was in force when these pleadings were made up. Even if this statute were held applicable to the case, yet we have decided in the case of *Platt vs. Robinson, supra,* 128, at this term, that it did not require an allegation of tender in the pleading, but only that it should be proved before the party should have the benefit of the plea. Under that decision, therefore, the want of such an allegation or offer to pay the principal would be no ground of demurrer. But as the parties desired a decision of this question on its merits, we will state the conclusion to which we have come. That is, that this provision of our statute is not applicable to a case of this kind, but was only intended to apply to contracts made under our law, by which the usurious security is valid for the principal loaned. Having enacted this in section 4, it was very naturally followed by the provision that the party should tender the principal. It is true, the language of section 6 is broad enough to cover all cases of usury. But, we think it must be construed in connection with the other sections, and that it was evidently designed to include only cases arising upon contracts to which that act was applicable, and not to disturb the general rule that contracts depending for their validity and effect upon the laws of other states must be determined by those laws everywhere. The language of section 4 is equally comprehensive. It says "all bonds, notes," &c., shall be valid to secure the principal. But no one would construe this as intended to include such instruments executed in other states, under other laws. And we think section 6 falls within the same principle. To hold otherwise would be to suppose that the legislature while legislating for this state intended to include transactions occuring in other states, and to provide that although contracts made in such other states were void by their laws, yet that in this state they should be valid to a certain extent. This would be a substantial repeal of the

general rule above referred to, which we think was never intended.

In *Gale vs. Eastman*, 7 Met., 14, it was held that no deductions could be made under the law of Massachusetts on a usurious note executed in New Hampshire, and governed by its laws. The court says: The law of this commonwealth declaring what shall be the rate of interest, and what contracts shall be deemed usurious, also directs when suits are brought what deductions shall be made; but it is suits brought on *such* contracts, that is, contracts made in violation of its own provisions." Such we think was clearly the intent of our statute, and it is no answer to say that this is merely a part of the remedy, which is always governed by the *lex fori.* To apply it to a usurious contract made under the laws of New York, would make it something beyond a mere remedy, and give it the effect of determing the validity of the contract itself.

The counsel for the respondent relies on the decision that the New York law prohibiting corporations from setting up the defense of usury, was applicable as well to usury arising under the law of England, as to that under the law of New York. The remarks of the judges in *Curtis vs. Leavitt*, 15 N. Y. Rep., 9, would seem to go to that extent. But as the law of England, like that of New York made the contract void, there was no occasion for the court to notice any distinction. The corporation in that case was also a domestic one, and there was no question that it was intended to be reached by the law. This decision alone we should not regard as necessarily conflicting with the views we have taken. But in the subsequent case of *Ins. Co. vs. Packer et al.*, 17 N. Y. R., 52, the same rule is approved, and the court go further and hold that it would apply to foreign corporations, litigating in the courts of that state. I admit that these two decisions taken together seem in conflict with our conclusion. They

would seem to show that if an English corporation should be sued in New York by an English citizen, on an English contract, that the corporation could not show it usurious and void by the law of England. But I think that is carrying the application of local law farther than either authority or principle would warrant. It could not be supported by the rule that no country is bound to enforce contracts or agreements made in other countries, by which it would violate its own public policy. It could not well be said that the public policy of New York could extend to affect contracts made between citizens of another country, and the execution of which could only affect the rights or interests of the citizens of that country. And to say that the law of New York should in such a case prevent the defendant from showing the contract void by the law of the country where made, seems to be no less than a repeal of that general and essential rule that a contract valid where made is valid every where, and if void where made is void every where. It would be making a contract where none existed before. It would be saying to the citizens of other countries who had violated its laws, that if they could sue in New York, their illegal contracts should be enforced. It may, perhaps, be competent for the legislature of any state to make so serious an inroad upon the general principle referred to. It certainly has entire control over the remedy. But it would seem to be going great lengths to say that it may determine the validity and effect of contracts between the citizens of other countries, and make those valid that were void, and those void that were valid. To indicate such an intention the language should be unmistakable, and certainly no ordinary law, purporting only to establish a rule for the state where made, should be stretched to an attempt to legislate for other countries. Nowithstanding these cases, we are, therefore, still of the opinion that our statute was designed only to regulate the effect and validity of contracts

made under it, and not those made under the laws of other states.

Was the defendant bound to offer the principal, under the established rule in New York? We think not. It was a well settled rule in their courts of equity, that where a a party had to resort to the aid of a court of equity, to avoid a usurious contract, they would compel him to do equity, and pay the principal. But where he was a defendant, the other party having resorted to the court to enforce the security, this rule did not prevail. He stood there on his legal right, and if he could set up and prove the usury, without the aid of the court, it was bound to declare the contract void. *Fanning vs. Dunham*, 5 J. C. R., 122; *Livingston vs. Harris*, 3 Paige, 528. The statute which changed this rule as to the borrower, where he filed his complaint, evidently recognizes this same distinction. For it was clearly its design to place him in the same situation where he proceeded affirmatively, as he would have before as defendant. If the previous rule had required him to pay as a defendant, the statute would undoubtedly have changed that also. We think, therefore, if the defendant had set up a good defense of usury, and been able to support it without the affirmative aid of a court of equity, there was no law requiring him to tender the principal.

But in his answer the defendant alleges an incapacity to aver the defense with that certainty and particularity requisite, and asks that the plaintiffs may be examined. By the code the action for a discovery is abolished, and it provides that every party may be examined as a witness. § § 54, 55, chap. 137, R. S., 1858. Can a party, under this provision, be examined for the purpose of eliciting facts to enable the opposite party to plead? The only case we have found where the question is suggested, is that of *Chichester et al. vs. Livingston et al.*, 3 Sand., 718, and there the court say, " it has been

thought by some," that such examination might be had. If it can be had, is an application for such an examination, such a resort to a court of equity for affirmative aid, under the law as it exists, as should bring a party within the rule requiring payment of principal? And further, can a party be compelled to testify, when the effect of his evidence would be to subject him to a forfeiture? In the case of *Livingston vs. Harris*, 3 Paige. It was held that he could not. In the case of *Cooper & Staines vs. Tappan*, 4 Wis., 371, the question is alluded to, and it is said that the defendant in such a case, " could not, perhaps, have been compelled to answer that part of the bill which sought a discovery of the alleged usury." The same case was again before us at the present term, 9 Wis., 361, and the point was suggested, but as the defendant had voluntarily answered, we thought it not involved.

We have thus, at the desire of counsel, though determining the demurrer on the ground first stated, passed on the other material questions discussed. A decision of the question last stated, as well as of the one previously suggested, as to the terms upon which an amendment should be allowed, may be essential to a final determination of the case; but as they were not argued, and are important in themselves, we shall leave them for decision as they may arise.

The order sustaining the demurrer is affirmed, with costs, and the cause remanded for further proceedings according to law.