JOHN DOUB

vs.　　　　　December Term, 1847.

ABRAHAM BARNES ET AL.

[EQUITY—WAIVER OF JUDGMENT LIENS—EVIDENCE—MULTIFARIOUSNESS—USURY—PRACTICE.]

THE defendants conveyed, by deed, a large amount of real and personal property, to trustees, in trust, to sell the same, and out of the proceeds to pay the claims of their creditors, without priority or preference, except as the same might exist by law. The trustees, in execution of their trust, sold parcels thereof to the complainant and others. At the time this deed was executed, there were unsatisfied judgments, to a large amount, against the grantors, upon some of which, writs of *scire facias* were issued, and *fiats* rendered against the original defendants in the judgments, and the *terretenants*, the purchasers from the trustees, and upon these *fiats* writs of *fieri facias* were issued and laid upon the lands purchased by the complainant. Upon a bill to restrain proceedings upon these executions, it was HELD—

That if the judgment creditors assented to the deed of trust, and by their conduct induced the complainant and others to become the purchasers of the land bound by their judgments, and to believe that they would look to the trustees for the payment of their claims, and not to their judgment liens, such conduct would furnish a valid equitable defence.

To allow the judgment creditors, after such a course of conduct, to enforce their judgments against the purchasers, would be to permit them to perpetrate a fraud upon the latter. Upon such a state of facts, the purchasers would not be bound to see to the application of the purchase money.

A defence, founded on such circumstances, can only be rendered available in a court of equity, on the ground of fraud.

An injunction can only be dissolved by positive contradictory averments in the answer ; and, an answer founded upon hearsay is not sufficient to remove the complainant's equity, though resting upon information derived from others, it denies the facts out of which that equity arose.

Upon motion to dissolve, credit can only be given to the answer, in so far as it speaks of responsive matters, within the personal knowledge of the defendant, and unless, so speaking, the equity of the bill is sworn away, the injunction cannot be dissolved.

Although an answer, founded upon hearsay, is not to be treated as an answer resting upon personal knowledge, it is sufficient to put the complainant upon the proof of the averments of his bill.

An attorney either in law or in fact, would not have the power to bind his principal by an agreement to surrender his lien upon the land, and to look exclusively to the trustees, without an express authority for that purpose.

Where a party executing a deed made a formal proposition to his creditors, in writing, which, some accepting, the trust was created, and upon a dividend being made, a creditor received from the trustees an equal share with the

rest—such creditor must be considered as affirming the deed, and, of course, bound by it.

But where a deed, in which all legal priorities were preserved, was executed, without any proposition made to creditors, or any previous consultation or agreement with them, a creditor, by receiving money from the trustees in part payment of his judgment, does not thereby render the provisions of the deed binding upon him, nor waive the lien of his judgment.

A party who has assigned a judgment, without recourse, except as to his right to assign and transfer the same, is a competent witness for the assignee, in a suit to enforce the judgment; the warranty extending only to the *right* to make the assignment.

Where an original and amended bill merely unite two cases of complaint growing out of the same transaction, affecting the same question of right, being the right of the complainant to relief against the judgment of the defendant, they cannot be regarded as obnoxious to the objection of multifariousness.

A party who has paid a judgment, founded on a usurious debt, may ask to be relieved as to the amount paid beyond what was legally due and recoverable; and this may be done without paying or offering to pay any thing, because the application for relief is predicated upon the averment, that too much has been already paid.

A purchaser from the mortgagor may avail himself of the defence of usury, to defeat the action of the assignee of the mortgagee.

If the assignors, in this case, might require the defendant to repay the excess which he may have received over his debt and legal interest, the assignee, the complainant, who claims under and through them, may do so likewise.

—

[On the 11th of October, 1839, Abraham Barnes, being indebted in various sums of money, and Melchior B. Mason and John Thompson Mason, being bound with him for a portion of his debts, they conveyed, by deed of that date, a large amount of real and personal estate to William Price and David G. Yost, in trust, out of the proceeds and avails thereof, to discharge the claims of their creditors, without priority or preference, *except as the same might exist by law.* The trustees, in execution of their trust, proceeded to sell parcels of said trust estate to divers persons, and among others to Doub, the complainant, to whom they sold, on the 25th of March, 1840, a portion of the estate of John Thompson Mason, conveyed to them as aforesaid, for a sum exceeding $12,000, and on the 21st of October, 1843, another portion of the same for upwards of $900.

At the time the deed of trust was executed, there was a large amount of unsatisfied judgments against Barnes individually,

and also against him and the Masons, collectively;· and in the year 1844, a number of them being still unpaid, writs of *scire facias*, were issued upon them, against the original defendants and the *terretenants*, and at March term, 1845, of Washington County Court, *fiats* were entered upon them. A number of these judgments were subsequently entered for the use of Margaret A. Mason, with whose separate trust estate they had been purchased, by her husband and trustee, John Thompson Mason, and upon the *fiats* thus rendered, and marked for her use, writs of *fieri facias* were issued to March term, 1846, of Washington County Court, and laid upon the land purchased by Doub, as above mentioned, from said Price and Yost.

The principal object of this bill was to prohibit proceedings on these executions, and an injunction for that purpose was granted by the late Chancellor on the day the bill was filed. This injunction was afterwards upon hearing, dissolved, and on an appeal taken, the order of dissolution was, at the June term, 1846, of the Court of Appeals, affirmed as to Lynch and Craft, two of the judgment creditors, but reversed as to John Thompson Mason and wife, and the cause was remanded to this court for further proceedings. An order reinstating it having been passed, and proof taken, the cause was argued by counsel and submitted to the Chancellor, for his decision.

The other facts in this case, as elicited by the pleadings and substantiated by the evidence, their effect upon the merits of the questions raised, and what those questions were, will appear from the opinion of the Chancellor, who, after stating the nature of the case, proceeded as follows :]

THE CHANCELLOR :

The Court of Appeals in their opinion upon the question before them, make a statement of the equity of the complainant's bill, and the judgment of this court upon the matters now to be decided, must turn upon the conformity of the proof with the facts set forth in the bill, upon the existence of which, in the view of the appellate court, the complainant's right to relief depends.

Such must certainly be the case with regard to all the questions settled upon the former appeal.

The facts alleged, then, which constitute the complainant's equity, are, 1st, That after the judgments were rendered against Barnes and the two Masons, they executed a conveyance to the trustees, Yost and Price, on the 11th of October, 1839, of all their real estate in Washington county, and a large personal estate, in trust, to pay their debts according to their legal priority—the said trustees being the attorneys of the judgment creditors. 2d, That the existence of said deed was made known to said judgment creditors shortly after its execution, and that they acquiesced in the assumption by the trustees of control over the property conveyed, and suspended all proceedings upon their judgments. 3d, That by acts indicative of their intention to look for payment of their claims to the proceeds of sales which should be made by the trustees, they gave credit to them, and enabled them to make more advantageous sales for the creditors than could otherwise be effected. 4th, That the complainant was persuaded to make payment, from a belief, well founded in the conduct of the creditors, that they would look to the trustees, and only to the trustees, for payment of their claims out of the proceeds of the sales to be made by them. The court, after thus stating the equity of the bill, proceed to show what sort of a case the plaintiff must prove, to entitle him to relief; and in doing so, say that, "if the judgment creditors assented to the deed of trust, and by their conduct induced the complainant, and others, to become the purchasers of the land bound by their judgments, and to believe that they would look to the trustees for the payment of their claims, and not to the liens created by their judgments, that such conduct would furnish a valid equitable defence. To allow the judgment creditors, after such a course of conduct to enforce their judgments against the purchasers, would be to permit them to perpetrate a fraud upon the purchasers. The obvious consequence of such a procedure on the part of the judgment creditors, would be to lull the purchasers into a false security, and to induce them to believe that a title would follow the payment of the purchase money. Upon

the state of facts alleged, it would not be necessary for the purchasers to see to the application of the purchase money; credit being given to the trustees, and they being known to be alone looked to for the payment of the judgments by the proceeds of sale." And the court go on to say, that a defence, founded upon the circumstances stated, could only be made available in a court of equity upon the ground of fraud.

[Passing over the judgments of Lynch and Craft—the Court of Appeals having decided in their favor—the Chancellor continued:]

The attention of the court is now confined to the judgments which have been assigned to, and marked for the use of Margaret A. Mason, short copies of which are to be found in the complainant's exhibit C, filed with his bill; and the question is, whether these judgment creditors, the parties who assigned to her, did assent to the deed of trust to Price and Yost, and by their conduct induce the complainant and others to become purchasers of the lands bound by the judgments, and to believe that they would look to the trustees for the payment of their claims, and not to the liens created by them?

In other words, that these judgment creditors, knowing and assenting to the terms of the deed, were willing to abandon wholly their liens on the lands conveyed by it, and to look exclusively to the trustees; and by their conduct, indicative of such willingness, the complainant and others were induced to purchase.

This, the Court of Appeals say, would constitute an equitable defence against the judgments; as to permit them to be enforced under such circumstances would be to tolerate the perpetration of a fraud against the purchasers. Upon the bill which made this case, the complainant displayed an equity which entitled him to an injunction, which could only be dissolved by positive contradictory averments in the answer; and as the answer of John Thompson Mason was founded upon hearsay, and not personal knowledge, it was not regarded as sufficient to remove the complainant's equity; though, resting upon information derived from others, it contained denials of

the facts out of which the equity arose. Upon the motion to dissolve, credit could only be given to the answer in so far as it spoke of responsive matters, within the personal knowledge of the defendant ; and unless so speaking, the equity of the bill was sworn away, the injunction could not be dissolved.

But the case is now before this court for final hearing, upon bill, answer and evidence ; and, although an answer founded upon hearsay, though denying the complainant's equity, is not to be treated as an answer resting upon personal knowledge, it is certainly sufficient to put the complainant upon the proof of the averments of his bill. And the question, therefore, is, has he succeeded in establishing by evidence those averments, upon which his title to the aid of this court depends.

With respect to the judgment at the suit of William McKim, it is admitted by the solicitor of the complainant, that he has made no defence, and therefore as to that, the injunction must be dissolved.

And with regard to the judgment at suit of Brooks and Hotch-kiss, the only attempt to make out an equity against it, is the production of a receipt signed by D. G. Yost as their attorney, to the trustees for $200, in part payment of the judgment, on the 8th of July, 1840. This receipt of a part of the money from the trustees, and the delay and forbearance to enforce payment of the residue, is thought to afford a sufficient foundation for interfering, as against these parties, all those circumstances which, in the opinion of the Court of Appeals, would make it fraudulent to allow them now to proceed to enforce their liens against the land. I am not prepared to concur in this reason-ing, and therefore as to this judgment, also, the injunction must be dissolved.

The argument before me was principally directed against the judgments at suit of John Trimble and John W. Brown, which appear to have been assigned, in the first place, to the Bank of Baltimore, and afterwards by the bank to Mrs. Mason, and the judgments at suit of Henry Tiffany, and William Tiffany and others ; which were by them also assigned to her.

With reference to the judgments at suit of Trimble and

Brown, which passed to Mrs. Mason, through the Bank of Baltimore, much reliance is placed by the complainant's solic-, itor, in his effort to show that to let them loose against the land purchased by him, would be to enable the holder of them to perpetrate a fraud—upon a correspondence between John M. Gordon of Baltimore, and Yost, one of the trustees—he, Yost, being also the attorney of some of the judgment creditors.

Mr. Gordon was not an officer of the bank, but a practicing lawyer in the city of Baltimore, though not an attorney of Washington County C ourt, in which the judgments were rendered. The correspondence between him and Mr. Yost covers a period from the fall of 1840 to 1844, and after a careful reading of it, and an attentive consideration of the argument of the complainant's counsel, founded upon it, I am unable to deduce from it the conclusion, without which the assignee cannot be denied the benefit of her judgments.

Mr. Gordon, it will be observed, was not an officer of the bank. He was its attorney, either at law, or in fact, and in neither capacity can it be successfully maintained, he would have the power to bind his principal by an agreement to surrender its lien upon the land, and look exclusively to the trustees, without an authority for that purpose. The opinion of the Court of Appeals in this case, with reference to the judgments of Lynch and Craft, is conclusive upon this question.

That Mr. Gordon was not authorized to agree to the provisions of this deed, and did not in fact so agree; nay, that he never saw it, nor was requested to give his consent to it as the attorney of, or on behalf of the bank; and that he always looked to the payment of the judgments in the order of their priority, and as liens on the property; is expressly stated by him in answer to the first cross interrogatory on the part of the defendant. An answer which the Chancellor thinks not at all inconsistent with the whole scope and tenor of the correspondence, and quite in harmony with the answer of the same witness to the complainant's second interrogatory in chief.

12

It is, therefore, thought, if this case was before a jury upon all the evidence, the inference that Gordon, with the authority of the bank, assented to the provisions of this deed, and agreed to give up the liens of the judgments, and look alone to the trustees for the payment of the money, could not be made.

Neither can it be said, I think, that there was anything in the conduct of the bank, or of Mr. Gordon, in this correspondence, even assuming, in opposition to his evidence, that every letter from him was written under special directions from the former, which could have induced the complainant and others to become purchasers of the land, and to believe that recourse would only be had to the trustees for the payment of the money ; the liens created by the judgment being altogether abandoned.

So far as the complainant himself is concerned, the principal purchase made by him was anterior to the commencement of the correspondence, and only a little more than five months from the date of the deed. With respect to that purchase, therefore, it seems impossible to say that he was influenced by the correspondence. And with regard to the last purchase, in October, 1843, there is no evidence that he ever saw the correspondence. Indeed, a portion of it, and some of the letters now mainly relied upon by the complainant, bear date after the purchase was made. Besides, as with regard to some of the judgment creditors, Lynch and Craft, and McKim, for example—it is not pretended that anything was said or done by them to induce the complainant and others to purchase, or to lull them into a false security, there is no very good reason to believe that the purchasers looked to the conduct of the judgment creditors at all; but, that they were governed by their confidence in the integrity and legal capacity of the trustees, duly to fulfil the trusts confided to them by the deed. If the purchasers, not relying upon this confidence, but adopting the precaution of ascertaining the assent of the judgment creditors to the provisions of the deed, and their willingness to abandon their liens, would not buy without such assent, it is not very probable that the objection would have been removed unless

all the creditors would come into the arrangement. And the circumstance that a portion of the creditors did not so assent, is evidence that the purchasers bought upon their faith in the ability of the trustees to assure them good titles, without the assent of the judgment creditors. For it is not to be supposed, if they required the assent of some, that they would have been satisfied with anything short of the assent of all; and the assent of all they certainly did not procure. With regard especially to the complainant, there is, independently of inferential reasoning, strong grounds for supposing that his confidence in Mr. Yost,'one of the trustees, induced him to rely exclusively upon his, Yost's, judgment, in regard to the title; and that he was not acting upon impressions founded upon the acts of the judgment creditors.

It has been already remarked, that the principal purchase made by the complainant was only a few months after the date of the deed, and, therefore, with respect to that purchase, no inference in support of it can be made from delay, or from suspension of proceedings on the part of the creditors; though it is expressly stated by the Court of Appeals, that the rights of the creditors would not be prejudiced by such suspension, if they always looked to their judgments, and not to the deed of trust, for satisfaction; and the evidence of Mr. Gordon is explicit, that the bank never was asked to agree to the provisions of the deed, nor never gave him authority to do so, and that he always looked to the payment of the judgments in the order of their priority, and as liens on the property.

I am, therefore, of opinion, that with regard to the judgments to which Mrs. Mason has acquired title from the Bank of Baltimore, the complainant has not succeeded in establishing the facts which, according to the opinion of the Court of Appeals, would entitle him to relief against them by injunction.

The next inquiry relates to the judgments at suit of Henry Tiffany, and William Tiffany and others, which were also assigned to Mrs. Mason.

It appears, that on the 8th of July, 1840, receipts were given

by Mr. Yost, who was the attorney of these creditors, for sums
of money stated therein to have. been received by him from the
trustees in part payment of these judgments.   And these pay-
ments, it is said, have the effect of rendering the provisions of
the deed of trust binding upon the creditors.   The defendants,
Mason and his wife, have excepted to the admissibility of these
receipts, and it is by no means clear, that the exception is not
well taken.   But, assuming them to be competent evidence,
upon what principle is it that they shall have the effect of de-
priving the creditors of the lien of their judgments ?   It does
not appear in the first place, that the money thus receipted for
by Yost, ever reached the hands of his clients, and nearly
five years afterwards, when *fiats* were rendered on writs of *scire
facias* upon these judgments, no credit was asked, or given for
these payments.   And, in the next place, if the money was paid
over by Yost to his clients, there is certainly no evidence to show
that they knew that it arose from the proceeds of sales made by
the trustees under the deed, which was only executed the Oc-
tober preceding the payment.   The case of *Moale* vs. *Buchanan
et al.*, 11 *Gill & Johns.*, 314, is relied upon to show, that a cred-
itor who accepts a payment from trustees, must be considered
a party to the deed under which they act, and of course bound
by it.   But that case is totally unlike the present.   There, the
party executing the deed made a formal proposition to his cred-
itors in writing, which some of them accepting, the trust was
created, and upon a dividend being made by the trustees, the
creditor in question received an equal share with the rest.   And
upon this ground the Court of Appeals said he must be con-
sidered as affirming the deed, and the contract upon which it
was executed.   But here the deed to Price and Yost was ex-
ecuted without any proposition whatever being made to the
creditors, or any previous consultation or agreement with them ;
and by which all legal priorities were preserved ; and the trus-
tees, consequently, in the discharge of their duty, were bound
to extinguish the liens as they accrued.   No dividends, therefore,
have been or ought to have been struck among the creditors,
but the claim of each paid according to its date.   If, therefore,

the Messrs. Tiffany received the money in question from Yost, and knew that it was received by him from the trustees, they would have had a right to regard it as a payment growing out of their relative position as judgment creditors, and not on account of any advantage secured to them by the deed. Their receipt, therefore, of this money, if they did receive it, with knowledge of the source from whence it came, (of which however there is no evidence,) could not render it unconscientious in them now to insist upon the enforcement of their judgments, —as the Court of Appeals say, would have been the case, if the creditor in the case of Moale and Buchanan had been permitted to proceed upon his judgment, after receiving dividends under the trust.

I do not, therefore, think that an equity can be made out against these judgments, upon the footing of the receipts of Mr. Yost, either taken by themselves, or together, with the letters of the 27th of April, and 9th of June, 1843. Looking to the dates as well as the terms of those letters, I find it impossible to infer from them, those circumstances which the Court of Appeals have said must exist, to deprive the creditors of the rights secured them by their judgments.

But, independently of all this, the Messrs. Tiffany have been examined as witnesses, and each declared that they did not mean, and never did agree, to accept the provisions of the deed, and surrender their liens as judgment creditors.

It is true, they have been excepted to as incompetent witnesses, but looking to the terms of their assignment to Mrs. Mason, I cannot very clearly see what qualifying interest they have in the event of the present controversy.

The assignment is without recourse to them, except as to their rights to assign and transfer the judgments.

Their right to assign the judgments is one thing, but the rights which the assignee may assert under it is another; and, therefore, it by no means follows, that the assignors would be responsible to the assignee if it should turn out, that any thing had been done by the former, prior to the assignment, which de-

12*

stroyed the lien of the judgment, and restricted the remedy of the holder of it to a claim upon the trustees.

Surely the right to assign the judgment, for which right alone the assignors were to be responsible, could not be impaired by their agreement (if they made one) to be bound by the deed. The only breach of the contract on the part of the assignors, would be the want of a title to assign, and as it seems to me, no responsibility can attach to them because of any act of theirs by which the remedies for the enforcement of the judgment may be curtailed.

Before they could be held liable upon this assignment, it must be shown that they had no title to make the assignment itself, and not that the judgment has been shorn of some of its attributes by any agreement made by the assignors.

The authority to assign is one thing, but the legal effect and operation of the judgment, when assigned, is another and entirely different thing. It might, or might not, continue a lien upon the lands embraced in the deeds, but the waiver of the lien, if it has been waived, does not touch the right of the assignors to make the assignment, to which right alone can the warranty be understood as extending; the language of the assignment being, "without recourse to me, except as to my right to assign and transfer said judgment."

If this be so, the Messrs. Tiffany are competent witnesses; and looking to their proof, there does not appear to be any ground upon which an equity against these judgments can be raised.

But, as has been already remarked, even if the depositions of these witnesses are excluded, I do not think the complainant has succeeded in the attempt to deprive the holder of these judgments of the lien created by them, by establishing those facts which, according to the opinion of the Court of Appeals, are required to be shown for that purpose, and, therefore, as to them, also, the injunction must be dissolved.

Having thus disposed of the case, so far as the injunction is concerned, it next becomes necessary to consider the questions in controversy between the complainant, and the defendant John Hanson Thomas.

Mr. Thomas was made a defendant to the original bill, as one of the purchasers of a portion of the land from the trustees, for which it was alleged he paid no money, the same being allowed to remain in his hands, under an impression that the trust fund, exclusive of the purchase made by Thomas, would be sufficient to discharge all the judgments of elder date than the one which had been recovered by Thomas himself against Barnes and the Masons, in 1839 ; and that, consequently, the consideration of the land purchased by Thomas would be properly applicable to the payment of the judgment held by him. The bill alleged, however, that this impression was so far groundless that the judgments on which executions had been issued and been levied on the land, purchased by the complainant of the trustees, were elder in date than the judgment recovered by Thomas, and that, therefore, equity required that Thomas should be made to pay the purchase money due from him, before the complainant should be called on a second time to pay for the land which he had purchased ; and prayed relief accordingly.

After the answer of Thomas to this bill was filed, the complainant asked and obtained leave to file an amended bill, in which he alleged that the judgment recovered by Thomas was founded on a usurious contract, the nature of which is set forth in the bill ; insisting, that if the judgment by reason of the usury is not to be regarded as absolutely void, it should only stand as a security for the sum actually and fairly due ; and then prays for a discovery, and such relief as the case may require. The defendant Thomas demurred to this bill, 1st upon the ground, that it made no case which entitled the complainant to a discovery from, and relief against the defendant. 2nd, That the two bills, original and supplemental, contained multifarious matters, not proper to be blended in the same suit. 3rd, That the complainant has not tendered, or offered to pay, the amount actually due the defendant, with interest thereon. 4th, That the complainant has shown no title to seek a discovery, or obtain relief. And 5th, That if the defendant is answerable to any one touching the matters in the bill, the complainant is not the party to whom he is so answerable.

It would appear from a paper dated the 23rd of February, 1844, and filed with the answer of Thomas to the original bill, that he knew of the existence of judgments of elder date than his own, and that a deficiency of the trust estate was a possible, not to say probable, contingency; and it is, therefore, very questionable, whether he can be permitted, in concert with the trustees, to secure such an application of the trust estate to the payment of his own debt, as shall disappoint or prejudice prior incumbrancers. But, whether this be so or not, there seems on the part of the complainant, who paid his money to the trustees, an equity superior to that of Thomas, who took land in satisfaction of a junior, when elder liens remained outstanding. If this arrangement between Thomas and the trustees is to stand to the prejudice of Doub, the complainant, that is, if Thomas shall keep all he has received, and the judgment creditors are thrown upon the land purchased by the complainant, then he will be compelled to pay for his land a second time, while Thomas will not have paid once for his ; because, upon the hypothesis, that the trust fund would have been exhausted in paying judgments prior in date to his, the judgment held by him was of no value.

I do not think the objection upon the ground of multifariousness is well taken.

The original bill sought relief against Thomas upon the ground, that the judgment, in part satisfaction of which he received the land from the trustees, was younger than those for which the complainant's land was about to be sold ; and therefore, equity required that he (Thomas) should be made to pay, before the complainant should be compelled to pay for his land a second time.

That bill was founded upon the idea that this defendant had, by arrangement with the trustees, secured to himself an advantage against which equity would relieve, upon the application of a party prejudiced. The amended bill proceeds upon the supposition, that the same judgment (in respect of which the inequitable advantage charged in the original bill, is said to have been secured) is tainted with usury, and upon that ground prays for relief against it.

With respect to this transaction, then, between the defendant, Thomas, and the trustees, two grounds of complaint are urged —that is, the transaction is impeached upon two grounds— one of which, conceding the judgment to be valid, insists that funds have been applied to its satisfaction which were applicable to the payment of elder liens. Whilst the other calls in question the validity of the judgment itself, because the debt, to secure which it was rendered, is founded upon a usurious contract. The bills, therefore, merely unite two causes of complaint growing out of the same transaction, affecting the same question of right; being the right of the complainant to relief against the judgment of the defendant. Such a bill I do not regard as obnoxious to the objection of multifariousness. *Story's Eq. Pl.*, 233, *section* 284.

The next ground of demurrer is, that the complainant does not by his bill, tender, or offer to pay, the amount of the debt actually loaned, with the interest thereon.

But, in this case the allegation is, that the defendant has already received more than the amount of his claim, with interest; and that at all events, without a discovery from him it is impossible to determine what the actual amount of his debt is; and, therefore, to say that the complainant shall not have a discovery as to the usury, without paying, or offering to pay, the principal debt and legal interest, is to deny relief altogether. In the case of *Jordan* vs. *Trumbo*, 6 *Gill & Johns.*, 106, the Court of Appeals say, that a party who has paid a judgment founded on a usurious debt, may asked to be relieved, "as to the amount paid, beyond what was legally due and recoverable," and of course this may be done without paying, or offering to pay any thing, because the application for relief is predicated upon the averment, that too much has been already paid.

The next objection is, that if the defendant is answerable to any one touching the matters contained in the amended bill, he is not answerable to the complainant.

This objection, it is presumed, proceeds upon the ground, that Barnes and the Masons alone could ask to be relieved against this claim, as founded upon a usurious consideration.

The complainant is the assignee of these parties, and the question is, whether, occupying that position, he may not set up usury against the judgment of Thomas, the payment of whose claim has operated, or is likely to operate, to his prejudice.

In the case of *D'Wolf* vs. *Johnson*, 10 *Wheat.*, 369, the Supreme Court was supposed to have decided, that the purchaser of an equity of redemption could not show usury in the mortgage, to defeat a foreclosure ; but the case of *Lloyd* vs. *Scott*, 4 *Peters*, 205, shows that the point was not involved in D'Wolf vs. Johnson, and the case reported in Peters proves that a purchaser from the mortgagor may avail himself of the defence of usury, to defeat the action of the assignee of the mortgagee. The right of the alienee of the mortgagor to avail himself of the defence of usury, is maintained by the Court of Appeals in *Trumbo* vs. *Blizzard*, 6 *Gill & Johns.*, 18, and I am not able to perceive why, if Barnes and the Masons might require this defendant to repay the excess which he may have received over his debt and legal interest, the complainant who claims under and through them, may not do so likewise.

Acting upon this impression, the demurrer of the defendant, Thomas, will be overruled, and he will be required to put in a full answer to the bill, within some reasonable time to be fixed by the order of the court. *Daniel's Ch. Pr.*, 674, 675.

The only remaining question is one of contribution among the several vendees of the lands embraced in the deed of trust. The Court of Appeals have said, that judgment against the terretenants gives the plaintiff at law a right to sell as much of the land as may be necessary to satisfy his claim, and if any one is injured he may resort to a court of equity to compel all who stood *in equali jure* to contribute ; but that the plaintiff at law is not bound to suspend his execution until the question of contribution shall be settled.

The statements and prayers of this bill are, I think, sufficient to found a decree upon for contribution, as among these vendees ; and they will, therefore, be required to contribute in proportion to the value of the land conveyed to each respectively.

Upon reading the terms and trusts of the deed, the whole property conveyed, irrespective of the particular grantor in whom the title may have previously been, appears to have been intended to constitute one common fund, for the satisfaction of all the debts designed to be secured; and I am, therefore, of opinion, that the contribution among the vendees must be simply, "in proportion to the value of the land conveyed to each respectively, without regard to the original source of the title," that is, to whether it was the property of Abraham Barnes, or either of the Masons, and that the value must be ascertained from the proofs now in the cause, and such further proofs as may be hereafter introduced by the parties.

There must also be a decree for an account against the surviving trustee, (William Price; D. G. Yost having died before the bill was filed in the cause.)

---

[So much of this decree as relates to John H. Thomas was affirmed on appeal. The Court of Appeals differed from the Chancellor on the question of contribution, and upon the appeal by Doub, the decree was, in part, affirmed, and the cause remanded.]