HUGH MAHER *et al.*

*v.*

MARTIN LANFROM *et al.*

1. CONSIDERATION — *extension of time of payment.* The payment of interest in advance is a sufficient consideration to support an agreement to extend the time of payment of a debt.

33 — 86TH ILL.

2. SURETY —*purchaser of incumbered property.* The purchaser of property from the mortgagor or grantor in a trust deed, after the mortgage or deed of trust is recorded, who assumes no liability to the mortgagor which the latter can enforce, is in no sense the surety of his vendor, the original debtor.

3. MORTGAGE — *extension of time of payment does not discharge as to purchase from mortgagee.* The extension of the time of payment to a debtor by mortgage while he holds the equity of redemption, does not release or discharge the lien of the mortgage, nor will such extension release the lien in favor of an assignee of the equity of redemption.

4. USURY — *charge of, in pleadings.* A charge, in an answer to a bill to foreclose a mortgage or deed of trust given to secure the payment of a note of $10,000 loaned, that $1,000 was retained out of the loan and only $9,000 received by the borrower when he gave the note, is sufficiently clear and specific that $1,000 was reserved as usury. So, a charge that a party had paid unlawful interest on a $2,000 note, at the rate of over twenty per cent per annum from a certain time to a given day, and claim that if such note be held valid, such amount should be deducted from the amount due thereon, and that all right to interest on such note be declared forfeited, was *held* sufficient to raise the question of usury.

5. SAME — *who may take advantage of.* If a party purchases from a mortgagor without any deduction from the price on account of the incumbrance, he thereby becomes invested with the right to interpose the same defenses as might have been made by the mortgagor. In such case the conveyance amounts to an authority to the purchaser to interpose the defense of usury against the collection of the mortgage debt, without regard to the actual value of the property. But if the sale is made subject to the mortgage, and the amount of the incumbrance is deducted from the price, the grantee or junior mortgagee will not be permitted to make the defense of usury.

6. Where it is not agreed or understood that the grantee or subsequent mortgagee shall pay the incumbrance with the usury, authority in him to make the defense of usury will be implied.

7. Equity and good conscience demand that where the mortgagor conceals, fraudulently or otherwise, the existence of an incumbrance, and his grantee purchases without actual notice, he be permitted to set up and rely on the defense of usury between his grantor and the holder of the incumbrance.

8. But where a grantee contracts with a view to the incumbrance, or is informed of its existence and fails to obtain permission to urge the defense, or fails to take covenants against the incumbrance, the presumption is that the incumbrance, as it appears on its face, formed a part of the consideration he was to pay for the property, and he can not make the defense.

9. SAME — *recovery, when established.* When usury is established, the creditor must be limited in his recovery to the principal, without interest, applying all payments, whether made on account of interest or otherwise, to the principal.

10. PURCHASER — *when he assumes incumbrance.* The fact that property purchased is worth more than the price paid for it and an incumbrance thereon,

is not sufficient to show that the purchaser took the same subject to such incumbrance, in opposition to the express denial of such purchaser in his answer. Taking a deed with covenants against incumbrances is evidence the purchaser was not to pay such incumbrances.

APPEAL from the Circuit Court of Cook County; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. Cox & McCARTHY and Mr. SIDNEY SMITH, for the appellants.

Mr. JOHN WOODBRIDGE and Mr. GEORGE W. SMITH, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In March, 1870, appellant Hugh Maher executed to appellee Silverman a note for $10,000, for money loaned him, and as collateral thereto he executed to him another note for $15,000. To secure the payment of the latter note, he conveyed to Leopold Silverman the premises in question, called the "Bridgeport property." Subsequently, on January 11, 1871, in substitution of the former, Hugh Maher executed a new note for $15,000 due at one year with ten per cent interest; also a new deed of trust to Leopold Silverman on the same premises. This deed of trust was recorded January 18, 1871, in the proper office. It was executed with the note to secure or to be held as collateral to the $10,000 note which has not been paid.

The $10,000 note fell due in May, 1871, when a new note for the same amount was given in renewal, payable six months after date. Soon after the fire of October of that year, Silverman, by agreement, extended the time for the payment of this last note one year. The consideration for this extension was the execution of an order, drawn by Maher on the Board of Public Works of the city, for money owing him. Several renewals were had, and in May, 1872, a new note was given, due at ninety days, for $10,000, and for its payment the $15,000 note was pledged. It was sold

by Silverman to Adsit, but was taken up by the former. In March, 1873, it was again sold to Lanfrom Brothers, and Martin Lanfrom is the survivor, owner and holder of the note.

In June, 1872, Maher conveyed the premises to one Walton, for the use of his wife. The deed expressed a consideration of $27,000 or $27,500, whilst it is admitted by the Mahers that the true consideration was $25,000 loaned by Mrs. Maher in August, 1871, and a further loan of an equal amount made in June, 1872. The money thus loaned was, it seems, a gift in 1869 by Maher to his wife. In June, 1872, the premises were conveyed to one Moore, in trust, to secure J. B. Lyon for advances made by him, but this, having been arranged, is not important in this case. On August 21, 1872, Walton surrendered the deed made to him, and Hugh Maher conveyed the premises to James Roberts. This was a deed of warranty, and the consideration expressed was $25,000. It was dated June 29, 1872, but was acknowledged on the day it was executed. Roberts, at the same time, by deed dated August 31, 1872, but acknowledged on the 21st, quitclaimed and released the premises to Mrs. Maher, his sister. But it is claimed that the actual consideration was the $50,000 previously loaned by Mrs. Maher to her husband. It is also claimed that the property at that time was of the value of $65,000 or more.

The $10,000 note bears numerous indorsements of interest paid in advance. The first is this: "Extended for thirty days from August 15, 1872, and interest paid for said time." The next extended it in like manner for sixty days, from September 15, 1872, and interest was paid to that time. The other indorsements are for interest paid to specified dates. The first of these extensions was before Mrs. Maher's deed was made as recorded; the others were afterwards. Mrs. Maher says she paid no interest on the incumbrance, nor did she consent to any extension of time for payment.

Mrs. Maher sets up and relies on the defense of usury

in her answer, and Maher testified that he paid one and a half per cent or more per month interest. On the other hand, Silverman says he only charged ten per cent interest, and the balance was for commissions for handling Maher's paper, etc.

On a hearing on the bill, answers, replications, exhibits, and proofs, the court below found the $10,000 note a lien on the premises, and computed interest thereon at ten per cent, and ordered the sale of the property to pay the amount. From that decree this appeal is prosecuted, and a reversal is asked.

It is insisted that when Mrs. Maher loaned the money to her husband, and afterwards purchased the property in satisfaction of her claim, she thereby became the surety of her husband for the payment of this debt. And it is claimed that inasmuch as she was a surety, when Silverman gave an extension of time for payment without her consent, he thereby released the property from the mortgage. On the other hand it is claimed that there was no binding extension of time for payment, and even if there was, that it did not release the security of the mortgage. From the decisions of this and other courts there is no doubt that there was a valid and binding extension of time. The payment of interest in advance has been held to be a sufficient consideration to render an agreement to extend the time binding. *Flynn* v. *Mudd*, 27 Ill. 323; *Warner* v. *Campbell*, 26 id. 282.

These cases establish the fact that there was a binding agreement to extend the time for the payment of this note; and the evidence shows the time was actually extended.

Then, was Mrs. Maher in any sense a surety for her husband? There is no evidence that she ever agreed to become his surety, or that she ever regarded herself as legally bound to pay this debt or any portion of it. She purchased the property after the mortgage was recorded, and is therefore chargeable with notice of its existence. But she testifies that she, at the time, had no knowledge of its existence.

Then, how can it be said that she occupies the position of a surety? She may pay it or not, as she may choose. The holder of the note can not sue and recover it against her, as she has done no act which has rendered her liable. There can not be the slightest pretense that she has.

But she purchased the property subject to this mortgage, and it is liable unless the holder has done some act which has rendered it inequitable to foreclose the mortgage and render the property liable for the debt. And the only act relied on, as sufficient for the purpose, is the extension of time as shown in the evidence. We have been referred to no case which holds that the extension of time to the debtor whilst he holds the equity of redemption, releases or discharges the lien of the mortgage, or that such extension of time releases the lien in favor of an assignee of the equity of redemption. Nor is it believed that any such case can be found.

The principle upon which the doctrine of such discharge of the liability of surety proceeds is that the contract of a surety is to be strictly construed and enforced. He undertakes that the money shall be paid, or the act performed, by a given day. He engages for credit until that time and no longer, and it is not in the power of the principal debtor and the payee to extend the time of performance, or change any other of the terms of the contract of the surety, without his consent. Again, when the time arrives for the payment of the money, by the terms of the contract he has the right to pay it, and look to his principal and enforce payment of the amount thus advanced for him. But when the time is thus extended, he is deprived of this right, and the law has determined that his liability can not be protracted, and when the time is extended, that he is discharged from further obligation under his agreement. The relation of principal and surety not existing, the rights, duties and liabilities of that relation can not exist. Mrs. Maher did not agree that she would pay, or that her husband should pay, the money at a particular day, or at

any other time, nor could she pay it and sue her husband for compensation, as a surety, unless it could be under the covenants in his deed.

She, on the contrary, is a purchaser, subject to the lien of the mortgage, and occupies that relation to the parties and to the property. Being such a purchaser, chargeable with notice, she, to prevent its sale to discharge the debt, must pay off the incumbrance. A party thus purchasing with actual notice is supposed to either deduct the amount of the incumbrance from the price paid, or to look to his grantor to reimburse the amount when paid by him. In any view we have been able to take of this question, we fail to see that the land was discharged from this lien.

It is also urged that the contract was usurious, and that Mrs. Maher may avail herself of the defense, and reduce the amount of the incumbrance to the amount of principal without interest, and have all payments made by Maher applied to a reduction of the principal. Against this it is urged that Mrs. Maher's answer does not set up usury with sufficient certainty and precision, and even if it did she can not interpose this defense, and it is also claimed that there was no usury in the transaction.

The answer may not be sufficiently specific as to each and all of the items of usury set up and relied on. But the charge that $1,000 was retained out of the loan, and only $9,000 actually received by Maher when he gave the note for $10,000, is specific and clearly made. This is a specific charge that this sum was reserved as usury. And it is alleged "that on or about the 15th of September, 1872, in consideration of the payment of a sum equal to one and a half per cent per month on $10,000 for sixty days, which sum was then and there paid by the said Hugh Maher to said Silverman, and the time of payment extended for said sixty days." " And that many similar extensions were made in pursuance of like agreements between Maher and Silverman." Again, Mrs. Maher charges in her answer that her husband had paid to Silverman, unlawfully, interest on the $2,000 note

at the rate of over twenty per cent per annum from March 13, 1873, to November 1, 1873; and if such note should be held valid, such amount should be deducted from the amount due thereon, and all right to interest on that note declared forfeited. These allegations setting up usury are clear and specific, and are entirely sufficient to raise the question of usury, whilst they were not in the case of *Mosier* v. *Norton*, 83 Ill. 519, and in this the cases are widely different.

Can Mrs. Maher then be heard to interpose this defense of usury? It is urged that such a defense is personal, and can not be interposed by strangers. It is true that the defense is personal, but there are privies who may rely on it. We suppose it will not be contested that an executor or administrator may interpose the defense. And sureties on a note may avail of such a defense. In the case of *Safford* v. *Vail*, 22 Ill. 327, it was held that sureties or some one standing in legal privity with the principal debtor, but not a mere stranger to the transaction, might interpose the defense. In the cases of *Henderson* v. *Bellew*, 45 Ill. 322, and *Valentine* v. *Fish*, id. 462, it was said that a mortgagor may sell or re-mortgage premises and authorize the purchaser or mortgagee to set up the defense of usury against the prior mortgage, but when such sale or mortgage is made in express terms subject to the previous usurious mortgage, the purchaser or mortgagee can not question the validity of the prior mortgage. In the first of these cases the deed of conveyance expressly stated that it was subject to the prior deed of trust, etc., and as there was a deduction in the price of the land equal to the incumbrance, it was held that the purchaser could only redeem by paying the incumbrance with the legal rate of interest expressed in the note and deed of trust.

The latter of these cases was virtually a bill to redeem, and although the conveyances were all, in terms, subject to the mortgage previously given, the mortgagor and makers joining in the bill, the defense of usury was allowed, and it

was said the grantee and holder of the equity of redemption had the right, with the consent of the mortgagor, to become a party to have the amount ascertained that he might pay and cancel the lien on his land. Thus it will be seen, in these cases the amount of the mortgage as it appeared on the face of the papers was taken into account by the parties when the equity of redemption was sold, and were both bills to redeem. The case of *Pike* v. *Crist*, 62 Ill. 461, follows these cases and announces the same rule.

In this case, however, Mrs. Maher purchased without any actual notice, as she had no knowledge of the existence of the incumbrance, although charged with notice by the record. Nothing was deducted from the price of the land when she purchased, on account of the mortgage, and she took, not by agreement, but by operation of law, subject to the incumbrance. And as the law has imposed the obligation, it surely can only impose it as it legally exists. Only the law barred the mortgagor, and in such a case the grantee is so far a privy in law as to be entitled to rely upon the defense of usury.

The property was conveyed to Roberts, by deed, with full covenants, and as it was to be by him conveyed to Mrs. Maher, it was the same, virtually, as if made to her by a mortgagor competent to convey. It seems to be the doctrine generally recognized that if a party purchases from a mortgagor without any deduction from the price on account of the incumbrance, the grantee thereby becomes invested with the right to interpose the same defenses as might have been made by the mortgagor. In such a case the conveyance amounts to an authority to the purchaser to interpose the defense of usury. See *Dix* v. *Van Wyck*, 2 Hill, 522; *Post* v. *Dart*, 8 Paige, 639; *Shufelt* v. *Shufelt*, 9 id. 137; *Brolasky* v. *Miller*, 1 Stockt. 807; *Daub* v. *Barnes*, 1 Md. Ch. 127; *Greene* v. *Tyler*, 39 Penn. 361; *Newman* v. *Kirshaw*, 10 Wis. 333; *Berdan* v. *Sedgwick*, 40 Barb. 359 — opinion by ALLEN, one of the judges of the present Court of Appeals.

In another class of cases it is held that where the mortgagor only sells the equity of redemption, or the amount of the incumbrance is deducted from the purchase money, the grantee or junior mortgagee will not be permitted to make the defense of usury.

In some of the cases referred to the mortgagor made default or had failed in his defense of usury, but the grantee or subsequent mortgagee was nevertheless permitted to set up and rely upon the defense    The principle announced is that a person purchasing the title, or receiving a junior mortgage without receiving any deduction from the price because of the usury, is such a privy of the mortgagor as may urge this defense.

It is true, that in some cases it is said that the grantee or a subsequent mortgagee can not interpose the defense without the permission of the mortgagor.   But it is not held that such authority must be express, either written or verbal.   We apprehend that an implied authority is all that is required, and we hold that when it is not agreed or understood that the grantee or subsequent mortgagee shall pay the incumbrance with the usury, the authority to make the defense will be implied.   The cases in this court do not announce a rule in conflict with this conclusion.   It is true, they do say that there must be express authority, but in that the expression is inaccurate, as implied authority only is required.

Equity and good conscience demand that when the mortgagor conceals fraudulently, or otherwise, the existence of the incumbrance, and his grantee purchases without actual notice, he should be permitted to set up and rely on the usury.   On the other hand, where the grantee contracts with a view to the incumbrance, or is informed of its existence and fails to obtain permission to urge the defense, or fails to take covenants against the incumbrance, the presumption is that the incumbrance, as it appears on its face, formed a part of the consideration he was to pay for the property, and it would be inequitable to permit him to

escape its burden. The party holding an usurious agreement has no legal right to its enforcement. It is only where the defense is not interposed that he may recover his usurious interest. And he will not be permitted to do so when it will operate unjustly against others who are in no fault. He has knowingly violated the statute, whilst a grantee who purchases without examining a record simply omits a precaution usually employed by prudent persons, the omission of which may subject him to loss.

It is urged that the property was worth more than the sum paid and this claim added, when the purchase was made. We fail to see that this changes the legal principles that should govern this case. Values of property in all great cities, as well as in the country, as all know, are subject to great and ruinous fluctuations. It may be that the property at this time is not worth even half of the sum which Mrs. Maher gave for it. If so, this burden will fall hard on her. Again, had she known of this incumbrance she might have declined to purchase. At any rate, the holder of the note must be limited in his recovery to what the law says he may legally collect—that is, principal without interest—applying all payments, whether made on account of interest or otherwise, to the principal.

We regard the evidence as clearly establishing usury.

It is urged that as the property is shown to have been worth more than the price Mrs. Maher paid for it, we should presume she took it subject to the deed of trust. It may be, and no doubt it was, worth the purchase money and the amount of this debt at the time; still, that fact is not of itself sufficient to overcome her express denial, and that of her husband and Roberts, to say nothing of the fact that she took covenants against incumbrances. This last fact is evidence that it was not agreed that she was to pay the incumbrance. If she assumed to pay the same, it is strange that such a covenant should have been given. If she was to pay the incumbrance, a release would have passed the title, and would not have in the slightest

degree rebutted any presumption that she was to pay the amount of the incumbrance as a part of the purchase money. It is all a question of intention — to be gathered from all the circumstances attending the transaction — and we are of opinion that it does not appear that it was agreed or understood that she so undertook or became liable therefor.

The evidence impels the belief that the transaction was usurious. Maher swears most positively that he received but $9,000 when the $10,000 note was given, and that $1,000 was retained as interest, and the note, it seems, bore ten per cent interest from its date. On the other hand, Silverman's evidence on that point is indefinite and confused. He does not fix or state the amount then paid. The evidence, we think, is clear and entirely satisfactory that this $1,000 was paid and reserved as interest, and that it was usurious, and proved as charged in the answer.

Again, it is charged that on or about September 15, 1872, in consideration of a sum equal to one and a half per cent per month on the $10,000 note, for sixty-days, the time of payment was extended for that length of time. This charge in the answer is proved by Maher. Silverman claims that such payments were for commissions he charged for negotiating this paper. Maher denies that there was any agreement to pay any such commissions; and even if there was, it would not free the transaction of the taint of usury. Such devices can not be allowed to defeat the provisions of the statute against usury. The charge of usury on the $2,000 note seems to be abandoned. The other allegations of usury set up in Mrs. Maher's answer being too general and indefinite, the other evidence of usury can not be considered. But as to the $1,000 and the other amount paid for an extension on the $10,000 note, we think the charges in the answer are sufficient, and that they are sustained by the evidence.

All the evidence considered, we have no hesitation in holding that the transaction is tainted with usury. The decree of the court below must be reversed, and the cause

remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*

Mr. JUSTICE BREESE, dissenting: I do not concur in all the views expressed in this opinion, especially upon the question of usury. The mortgagor himself did not plead usury, and his grantee, under the circumstances, ought not to be permitted to avail of it, inasmuch as the property was valued at $65,000, for which the grantor paid $50,000, the outstanding mortgage for $15,000 being known to exist, leaving the inference that the grantee was to pay the mortgage as it then existed.