VETTE v. GEIST, Appellant.

Division Two, March 5, 1900.

1. **Contract for Collecting Usurious Notes.** In a suit for an accounting by the owner of notes against an agent employed to collect them, the plea that the notes were usurious and were violative of the act of 1891 (Laws 1891, p. 170), respecting interest, usury and liens, will not avail as a defense, for four reasons: *First*, the action is not one for the enforcement of a lien upon personal property pledged or mortgaged to secure an indebtedness, nor to maintain or secure possession of property so pledged or mortgaged; *second*, such liens are not declared void by such act, but it merely prescribes a penalty of which the party against whom the lien is attempted to be enforced or his privies alone can avail themselves; *third*, the statute applies only to the lien, and does not in any way affect the debt secured thereby; *fourth*, an agent who received money for or in behalf of his principal will not be permitted to appropriate it to his own use or assume a position adverse to his principal's interest.

2. **Reference:** ORDERED BY THE COURT. The court may, before judgment, order a reference where the taking of an account is necessary for the information of the court.

3. ———: ———: WAIVER. A failure to make timely objection to the appointment of a referee amounts to a waiver of any right the parties may have to agree upon a suitable person for referee. It will also be held, in the absence from the record of anything to the contrary, that an opportunity was afforded the parties to agree and that they failed to do so, and that the court acted in accordance with law.

Vette v. Geist.

Apeal from St. Louis City Circuit Court.—*Hon. Leroy B. Valliant*, Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) Plaintiff's demurrer to the first affirmative defense set forth in the answer should have been overruled. Greenhood on Public Policy, pp. 1, 97 and 115; Koehler v. Feuerbacher, 2 Mo. App. 11; Kent v. Miltenberger, 13 Mo. App. 502; Buckingham v. Fitch, 18 Mo. App. 91; Turley v. Edwards, 18 Mo. App. 676; Downing v. Ringer, 7 Mo. 585; Pelz v. Long, 40 Mo. 537; Summers v. Summers, 54 Mo. 346; Sprague v. Rooney, 104 Mo. 349; Connor v. Black, 119 Mo. 126; Rozelle v. Farmers Bank, 141 Mo. 36; Smith v. Huffs, 10 Me. 71; Overby v. Overby, 21 La. Ann. 493; Kirk v. Morrow, 6 Heisk. (Tenn.) 445; Thorne v. Ins. Co., 80 Pa. St. 15; Rolfe v. Delmar, 7 Rob. 80; Wooten v. Miller, 7 S. & M. 380; Dent v. Ferguson, 132 U. S. 50; Hannay v. Eve, 7 U. S. 242; Maybin v. Conlon, 4 U. S. 298; Leman v. Groskopf, 22 Wis. 447; McKenzie v. Donnell, 52 S. W. Rep. 214. (2) The court erred in considering the referee's report as a foundation for the finding and judgment on defendant's second affirmative defense, and this is an error appearing on the record proper. Land Co. v. Bretz, 125 Mo. 418; State ex rel. v. Scott, 104 Mo. 26; McIntire v. McIntire, 80 Mo. 470; Weil v. Greene Co., 69 Mo. 286; Sweet v. Maupin, 65 Mo. 65. (3) The court erred in appointing Montague Lyon, referee, without first giving the parties an opportunity to agree upon the person to be appointed. 1 R. S. 1889, sec. 2139; State ex rel. v. Johnson, 132 Mo. 105.

*Lubke & Muench* for respondents.

(1) The portion of defendant's answer to which the demurrer was sustained, presented no defense, and the action

of the circuit court was correct.   (a)   The statutes on usury (up to the date of this contract), did not purport to render usurious contracts void, but merely prescribed a penalty for its violation; and that only when the other party to that contract chose to avail himself of it.   Strangers can not raise the plea. Laws 1891, p. 170; Bank v. Harrison, 57 Mo. 503; Keneery v. Marksberry, 57 Mo. 399; Am. Rubber Co. v. Wilson, 55 Mo. App. 659; Goodin v. Buhler, 57 Mo. App. 63; Hill v. Taylor, 125 Mo. 331.   (b)   Even if, in attempting to collect his assets, plaintiff might have run counter to certain statutory provisions, yet he is under the general protection of the law, and defendant will not be permitted to embezzle funds that he had collected as the agent of plaintiff on the mere plea that plaintiff should not have caused defendant to make such collections.   Read v. Mo. Pac. Ry. Co., 50 Mo. App. 507; State v. Williams, 29 Oh. St. 161; Greenhood on Public Policy, p. 27; Commonw. v. Del. & Hud. Canal Co., 43 Pa. St. 295; Swann v. Swann, 21 Fed. Rep. 299.   (2) The court below had the right and power to appoint Mr. Lyon as referee, because "the taking of an account was necessary for the information of the court."   Sec. 2138, R. S. 1889; State ex rel. v. Johnson, 132 Mo. 108.   The appellant here demanded no opportunity to agree with respondent upon the person of the referee, and his exception was merely to making any order of reference.   When, six days after the appointment, he filed his written motion to set aside the order of reference, he expressly refrained from setting up that ground.   Only after a most lengthy and searching hearing before the referee, and in his exceptions to the referee's report, did appellant for the first time, raise the point that the court had not asked him to agree upon the person of the referee.   That objection came too late.   Defendant had by his action waived his right to attempt an agreement with plaintiff.   State ex rel. v. Johnson, 132 Mo. 108.

BURGESS, J.—On the 25th day of April, 1895, plain-
tiff placed in the hands of defendant, for collection, notes
and mortgages executed by different persons to him, aggregat-
ing about $30,000, upon the terms and conditions of a written
contract entered into between them at the same time; and
this is an action by plaintiff against defendant for an account-
ing of the collections made by him under that contract.   The
contract provides that Geist will make all reasonable efforts
to collect said notes as same may become due, respectively, and
on the 1st day of each month he will render an account of the
collections made thereunder during said month, and turn over
to Vette the amounts so collected, less the amount of ten per
cent, which he is to retain as compensation for his services,
and that Geist will continue to render like accounts on the
first day of each month until the whole amount of the notes
placed in his hands under the contract is collected.   All notes
and accounts remaining unpaid in whole or in part on April
27, 1897, were to be deemed uncollectible, and to be returned
to Vette.   The petition alleges that in pursuance of said con-
tract the plaintiff delivered to defendant a large number of
notes and mortgages aggregating about $30,000, but that he
rendered only one monthly statement, which was on May 1,
1895, and, although he collected a large amount of money on
the notes and securities, the only payments that he made to
plaintiff on said account were $54.95 on said 1st day of May,
1895, which was in payment of collections made prior to that
date, and the sum of $590.94 on the 11th day of October,
1895, $22 on the 4th day of November, 1895, and $33 on the
6th day of November, 1895—the sum total being $700.89—
and that the remaining sum of about $10,000 so received and
collected by defendant to plaintiff's use, and as plaintiff's
agent, the said defendant has converted to his own use, and
has fraudulently refused to pay over and account for to plain-
tiff.   The petition then prays for an accounting, and for

judgment for the balance found due him thereon. In his answer the defendant admitted the execution of the written contract pleaded in the petition, but set up two affirmative pleas to the same. In the first it is alleged that plaintiff, Vette, had been engaged in the business of loaning money at usurious interest, and that the assets turned over by plaintiff to defendant had incorporated therein sums in excess of the actual amount loaned, and were therefore null and void in his hands, and the securities given for said debts could not be enforced; that, in order to collect such notes and mortgages, plaintiff conceived the idea of indorsing and transferring the same to defendant, so that defendant might represent and hold himself out as an innocent holder for value of the same, and thus be enabled to collect them; that plaintiff broached said scheme to defendant, and after due negotiations the same was consummated for the purpose aforesaid, and defendant accepted said securities for the purpose of collecting the same under the agreement so made, and thereupon the memorandum set forth in the petition was duly executed. And defendant pleads the said contract to be unlawful and contrary to public policy, because made in order to enable plaintiff to avoid the usury laws of this State. The second defense so affirmatively pleaded repeated the preliminary allegations of the first paragraph of the answer, and set forth additionally that defendant proceeded to collect upon the notes and mortgages so turned over to him, and on the 1st day of May, 1895, rendered a statement of the same under said contract, but that thereafter the plaintiff became dissatisfied with said contract, and on or about May 17, 1895, plaintiff and defendant entered into an oral agreement abrogating said written contract, and agreeing that plaintiff sold to defendant all said notes and securities upon the following terms, to wit: That defendant should continue to collect the same, and that if he should collect and turn over to plaintiff on or before January or February, 1896, the sum of $7,000, then defendant should become

the absolute owner of all remaining unpaid securities, and that thereafter the defendant held and treated said securities as his own until about the 4th day of November, 1895, when, at plaintiff's request, defendant resold all remaining uncollected securities to plaintiff for the sum of $4,527 in cash, and defendant retained all the sums that he had theretofore collected on said securities, and that in pursuance of said agreement defendant delivered all remaining securities to the plaintiff. To the first paragraph of this affirmative answer the plaintiff demurred on the ground that said paragraph did not set up facts sufficient to constitute a defense; that defendant, having collected plaintiff's money could not withhold the same from plaintiff on the plea that the parties from whom he collected the same should not have paid said moneys, and because defendant is estopped by his written contract from setting up such a defense. This demurrer was sustained by the court, leaving only the issue tendered by the second paragraph of the answer to be tried. On June 9, 1896, when the case came on for trial, the court ruled that the first issue to be tried was the affirmative defense set up in defendant's answer, with respect to which defendant assumed the burden of proof. After hearing the evidence of the respective parties upon this defense, the court took the matter under advisement, and on June 10, 1896, by order entered of record, referred the case to Montague Lyon, to state the account between the plaintiff and defendant touching the matters in plaintiff's petition mentioned without regard to said issues, and to report with all convenient speed. While objection was made by defendant at the time to the order of reference, no objection was then made to the appointment of Lyon as referee. But on June 16, 1896, defendant filed his motion to set aside the order of reference of June 10, 1896, which motion was thereafter overruled. At the December term, 1896, the referee made his report, in which it was found that the amount due plaintiff from defendant on

the accounting was $9,092.01.   Defendant then filed excep-
tions to the referee's report, which were thereafter, on January
18, 1897, overruled, the report approved and confirmed, and
final judgment rendered for plaintiff in accordance therewith.
In due time defendant filed his motion for a new trial, which
being overruled, he saved his exceptions, and appeals to this
court.

The evidence adduced before the referee was conflicting;
that on behalf of plaintiff tending to sustain his theory of the
case, while that on the part of defendant tended to sustain his
theory of the case.

The first point raised upon this record is with respect to
the action of the court in sustaining the demurrer to the first
affirmative defense set up in defendant's answer, in which he
insists that the court committed error.   It is argued that the
mortgages were void under the provisions of the second section
of an act of the General Assembly of this State with respect
to interest and usury, approved April 21, 1891 (Laws 1891,
p. 170), which provides that in actions for the enforcement of
liens on personal property pledged or mortgaged to secure
indebtedness, or to maintain or secure possession of property so
pledged or mortgaged, or in any other case when the validity
of such lien is drawn in question, proof upon the trial that the
party holding or claiming to hold any such lien has received
or exacted usurious interest for such indebtedness shall render
any mortgage or pledge of personal property, or any lien what-
soever thereon, given to secure such indebtedness, invalid and
illegal.   But we know of no reason or rule of law which
would authorize a defendant in a case like the one in hand to
avail himself of its provisions.   In the first place this is not
an action for the enforcement of a lien upon personal property
pledged or mortgaged to secure an indebtedness, nor to main-
tain or secure possession of property so pledged or mortgaged,
and does not fall within the provisions of the act upon either
of these grounds.   In the second place, the validity of such

lien can not be brought in question in this case, for the reason that such contracts are not declared void by the act, which merely prescribes a penalty for its violation, of which the party against whom the lien is attempted to be enforced, or his privies in blood or estate, can alone avail themselves. The right of a party to such a contract to avail himself of the provisions of the act is a personal privilege, of which a third party or stranger to the contract can not take advantage. [Hill v. Taylor, 125 Mo. 331; Union Nat. Bank v. International Bank, 123 Ill. 510; Green v. Kemp, 13 Mass. 515; Jackson v. Dominick, 14 Johns. 435; Lloyd v. Scott, 4 Pet. 205; Merchants Exch. Nat. Bank v. Commercial Warehouse Co., 49 N. Y. 642; Trumbo v. Blizzard, 6 Gill & J. 18; Brolasky v. Miller, 9 N. J. Eq. 807; Pinnell v. Boyd, 33 N. J. Eq. 600; Jones, Mortg. (5 Ed.), secs. 644, 1493; Sands v. Church, 6 N. Y. 347; Maher v. Lanfrom, 86 Ill. 513; Am. Rubber Co. v. Wilson, 55 Mo. App. 656.] Moreover, the statute only applies to the lien, and does not in any way affect the debt secured thereby. The debt remains unaffected by the result of the lien, whatever it may be. The plea does not even allege that any attempt was made to carry out what is claimed to be the unlawful agreement between the parties, or that any debtor was compelled to pay that which he would not otherwise have paid. But, even if the liens were illegal under the statute, defendant should not be permitted upon that ground to retain and appropriate to his own use moneys which he collected as the agent of the plaintiff upon them. An agent who receives money for or in behalf of his principal will not be permitted to assume an adverse position towards his principal in respect to such matters, and, when sued by him for moneys collected as such agent, can not defeat a recovery therefor upon the ground that the contract upon which the money was collected, or the transaction from which it was realized, was illegal. Mechem, Ag., sec. 526. In Chinn v. Chinn, 22 La. Ann. 599, it was held

that an agent who receives money for his principal, although it be composed of usurious interest, and not collectible by the principal himself, can not avoid the payment of it to his principal on the ground that the interest was usurious, and therefore illegal. The same rule is announced in Murray v. Vanderbilt, 39 Barb. 140; Daniels v. Barney, 22 Ind. 207; Kiewert v. Rindskopf, 46 Wis. 481; Brooks v. Martin, 2 Wall. 70; Gillian v. Brown, 43 Miss. 641; Baldwin v. Potter, 46 Vt. 402. It follows that the contract between plaintiff and defendant was not in any way affected by the character of the liens from which it is alleged defendant collected the moneys sued for, and, whether on legal or illegal contracts, he must account for the same. By requiring him to do so, no principle of public policy is violated, but the agent is simply debarred from taking advantage of his own wrong.

It is claimed that error was committed by the court in not rendering a final decision on the remaining affirmative defense before ordering the taking of an account between the parties for its own information, and appointing a referee for that purpose, without giving the parties an opportunity to agree upon a suitable person for that purpose. No objection was made to the appointment of the referee at the time, and six days thereafter, when defendant filed his motion to set aside the order of reference, he did not make the appointment of the referee one of the grounds therefor. Nor did he do so until December 30, 1896, after the referee had made his report, when he filed exceptions thereto, and made that one of the grounds, and it was then too late. By section 2138, Revised Statutes 1889, it is expressly provided that, where the taking of an account is necessary for the information of the court, before judgment it may of its own motion direct a reference (State ex rel. v. Johnson, 132 Mo. loc. cit. 108, 109) and, in the absence of anything in the record to the contrary, it must be presumed that the court thought it necessary for its information before finally disposing of the case that a reference

be had, and an account taken between the parties, and did not, we think, commit error in so doing. In Johnson's case, *supra*, a referee was appointed by the court upon its own motion, and it was insisted that the appointment was void because the complaining parties were not given an opportunity to agree with the adverse party upon a suitable person to act as referee, as was their right under section 2139, Revised Statutes 1889, and that the parties did not disagree as to such referee, but this court said: "The court possessed the power to appoint the referee. The conditions precedent to the appointment after the court determined the necessity were simply steps of procedure, however salutary and conducive to the rights of the parties, and the failure to observe the forms prescribed by the statute are at most only irregularities or errors which the parties may waive. The petition discloses that no exception was saved at the time and if none was saved then the action of the court must stand. If the exception was duly taken and preserved in a bill of exceptions during the term it will yet be available on appeal or writ of error. In the absence of such an exception appearing in the record of that court, the presumption must be indulged the circuit court accorded the parties their statutory rights." Defendant, by his failure to make timely objection to the appointment of the referee, waived any right that he may have had to agree upon a suitable person for that purpose. In the absence of anything appearing from the record to the contrary, it will be presumed that there was not only an opportunity afforded the parties to agree upon a referee, but that they failed to do so, and that the court having the power to appoint one in such circumstances, acted in accordance with law. It follows that the court did not err in considering the referee's report as a basis for the judgment on defendant's second affirmative defense, and that any objection which defendant may have had to the appointment of the referee was waived by failure to make timely objection. The report of the referee was not

only in accordance with the weight of the evidence, but in accordance with its great preponderance. Hence there is no merit in the contention that the finding and judgment should have been for the defendant. The judgment was clearly for the right party, and should be affirmed. It is so ordered.

*Gantt, P. J.*, and *Sherwood, J.*, concur.