# DANIEL VALENTINE *et al.*

## *v.*

# HENRY FISH.

1. USURY — *a purchaser of a contract tainted with — when may contest it as usurious.* The owner of land who has given a usurious mortgage upon it, may sell or mortgage it to another generally, and give to such purchaser or mortgagee, by express agreement, the same right to contest its validity as he himself had.

2. SAME — *when validity of usurious contract affirmed.* But, where the sale or mortgage is made subject, in express terms, to a previous usurious mortgage, the purchaser or subsequent mortgagee cannot question the validity of the prior mortgage.

3. PARTIES — *in chancery — who may be.* In chancery proceedings, a person, who, although at the time of the filing of the bill, may not have had a present existing pecuniary interest, but whose rights may and would be affected by a decree in conformity to the prayer of the bill, may properly become a party complainant in such suit, although it may not be strictly necessary that he should be made a party.

APPEAL from the Circuit Court of Will county; the Hon. SIDNEY W. HARRIS, Judge, presiding.

The facts in the case are fully stated in the opinion.

Mr. EUGENE CANFIELD, for the appellants.

Messrs. GOODSPEED, SNAPP & KNOX, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Will Circuit Court, by Daniel Valentine, Archibald, Jesse and Edward McAllister, against Henry Fish, to compel him to deliver up to be canceled a certain mortgage and notes which the McAllisters had theretofore executed to the defendant to secure a loan of $5,000 made by the defendant to them, on the allegation that the loan was at usurious interest, and that the whole debt, exclusive of the usury, had been fully paid. Valentine's right to join in the bill of complaint is based on the fact, that he has purchased the equity of redemption by deed, and that the mortgage is an apparent incumbrance on his title to the extent of $3,300, as claimed by the defendant, when he alleges the fact to be that the whole amount justly due, with interest, does not exceed the sum of $500, which he brings into court for the defendant.

The loan by the defendant to McAllister was for three years, and a note executed for $5,000, with interest at ten per cent.

The mode of conducting the business was this: Archibald McAllister applied to the defendant for a loan of $5,000, and it was agreed between them that defendant would loan him that sum for three years, provided McAllister would pay inter-

464        VALENTINE *et al. v.* FISH.        [Sept. T.,

Opinion of the Court.

est at the rate of fifteen per cent per annum, and should pro-
cure his co-appellant, Edward McAllister, to give his note for
the amount, payable at the time stated, to the order of defend-
ant, at his office, in Joliet, with interest annually at the rate
of ten per cent, and should also procure his other co-appellant,
Jesse McAllister, to become security in this mode; that Archi-
bald McAllister and Jesse McAllister, who were then partners
under the name of McAllister & Co., should, under the firm
name, sign the note as security, which note Archibald would
procure Edward McAllister to secure by mortgage upon lands
described therein, and which Edward McAllister then owned,
and that Archibald should procure Edward McAllister to give
his three promissory notes for $250 each, payable to the order
of defendant in one, two and three years from date, and should
also procure Jesse McAllister to become security thereon in the
same manner as upon the $5,000 note.

The agreement was fully carried out, and the notes and
mortgage duly executed and delivered to the defendant. This
was on the 18th of October, 1856.

On the 9th of May, 1857, Edward McAllister sold and con-
veyed the premises to Myron V. Hall; Nov. 19, 1857, Hall
sold and conveyed to Charles L. Hoyt and appellant Valentine;
June 11, 1861, Charles L. Hoyt and wife sold and conveyed
his interest to Charles Hoyt; and on February 10, 1862, Hoyt
sold and conveyed to Valentine.

It is averred in the bill, that, while Hall was owner, on the
18th of October, 1857, he paid to the defendant, on this loan,
$500, and the McAllisters, on the same day, paid and took up
the first note for $250; that on the 18th of October, 1858, Hall
paid on the loan $500; on October 12, 1859, $1,500; and on
the 18th of the same month, 1860, $400; that on the 18th of
October, 1861, Charles Hoyt and Valentine paid on the loan,
$1,400; on March 28, 1862, Valentine paid thereon, $1,000;
and on the 9th of December, 1862, $250, — all paid to the
defendant; and that on the 16th of September, 1863, the com-
plainants tendered the defendant $500, lawful money, as the
balance of the loan remaining due and unpaid, exclusive of the

usurious interest, and calculating the interest at six per cent per annum, and demanded that the notes should be surrendered and the mortgage should be released to Valentine, appellants paying the expenses.

On the refusal of the defendant to comply with this demand, this bill was filed, Valentine having the consent of the Mc-Allisters to join in the bill, that he might have the benefit of the defense of usury, by which his indebtedness would be reduced to the extent thereof.

The bill prays for an account in regard to the amount due defendant secured by the mortgage; and that defendant may produce the notes and mortgage before the court, and that all the payments that have been made upon them in pursuance of the usurious agreement, be applied in redemption of the princi pal and legal interest on the loan; and upon the payment of what shall be found due, the defendant be directed to release the mortgage, and to cancel and deliver up to the McAllisters the notes, and for an injunction, and for general relief.

An injunction was granted, and on October 4, 1864, com-plainants amended their bill to meet this fact. The deeds from Edward McAllister to Hall contained this clause, after the covenant of warranty: " Except a mortgage to Henry Fish for $5,000." The deed from Hall to Charles L. Hoyt and Valen-tine, with full covenants of warranty, after the descriptive words, has this clause: " This deed made subject to a certain mortgage, made to Henry Fish, by E. McAllister, upon which there still remains due and unpaid the sum of $5,000, with interest at ten per cent per annum from October 18, 1860." The deed from C. L. Hoyt to Charles Hoyt was for the consid-eration of $1,650, with full covenants of warranty, and, after the descriptive words, has this clause: " Subject to a mortgage from E. McAllister to Henry Fish, dated 18th October, 1856." The deed from Charles Hoyt to Valentine was a warranty deed, for the consideration of $2,000, and after the description of the land, this clause is found: " Subject to a mortgage made by Edward McAllister to Henry Fish, October 18, 1856, and recorded in Joliet, Illinois, and also all taxes."

30 — 45TH ILL.

In the amendment to the bill, it is alleged, these words, "subject to the mortgage," etc., were not intended, at the time the conveyance was made by Edward McAllister to Hall, to subject the conveyance to the mortgage, but only to limit the liability of Edward McAllister upon his covenant of warranty; and that Hall took the lands described therein, and all right thereto, as fully as Edward McAllister could convey the same; and that in the other deeds, down to Valentine, those words, "subject to," etc., were inserted by mistake, and that complainants did not know of their being there until after filing their bill; and they prayed that these deeds might be corrected and construed accordingly.

A motion to dissolve the injunction was allowed, and leave given May 17, 1865, to file suggestion of damages, which was done; but subsequently, on the 14th of August, 1865, the injunction was revived, on complainant's motion.

The defendant in his answer admits all the facts in respect to the usurious character of the transaction; admits that there has been paid on the note and mortgage all the interest that had accrued up to October 18, 1862, and $3,000 to apply on the principal sum, alleging, there is yet due on the mortgage $2,000, of principal and interest thereon from October 18, 1862; he admits the payment of the $250 note first due, by some arrangement with McAllister, on his books, and that he delivered up that note and the two remaining notes each for that sum, and received the McAllister new note for the amount of the two last notes, payable at a still longer time; that since the commencement of this suit he has delivered up and placed on file in this cause, to be canceled, the last mentioned note for the last two years extra five per cent interest, and has waived and relinquished all claim for such unpaid extra interest, and offers to rely solely on the loan covered by the mortgage for the payment of his claim; admits a tender was made, but as to the amount or time when, he does not recollect, but insists it was for much less than the amount due on the mortgage; he denies the allegations in the amended bill as to the mistakes, and

alleges that the McAllisters have no interest in this suit, and that Valentine is the only real party; that, when Edward McAllister conveyed the land to Hall, the amount due on the mortgage was deducted from the amount of the purchase money, and that Hall took the premises subject to the mortgage, agreeing with McAllister to pay the same; insists, that, in all the conveyances, they were expressly made subject to the mortgage to him, and that the grantees assumed and became liable to pay him the whole amount remaining due on the mortgage; denies all combination. A replication was put in, and, by agreement, the cause was referred to the master in chancery to take proofs and make his report in writing, and by further agreement the bill was considered as amended, so as to correspond with the facts stated by the defendant in his answer in relation to giving up the two notes for the extra interest, and taking a new note for the same, and the surrender and filing this new note.

Archibald McAllister, among others, was examined as a witness for the defendant, and he stated, that at the time the deed was made by Edward McAllister to Hall, he did the business, made the contract, and did every thing except to execute the deed; that the amount of the mortgage and the accrued interest, up to the day of sale, was deducted from the amount of the purchase money; that he was one of the firm of McAllister & Co., and that none of the members of the firm claimed any thing from the event of this suit; that Valentine offered him an interest in the suit if he would accept it, but he refused so to do and has no interest now.

The greater part of the testimony reported by the master, has reference to the execution of the several deeds from E. McAllister to Valentine, but no proof is made of the alleged mistake, and as to the tender it is shown, interest was calculated at six per cent only.

A decree *pro forma* was entered dismissing the bill, and an appeal prayed and allowed to this court, and the error assigned is, dismissing the bill, and refusing the relief prayed.

The testimony of Valentine, taken before the master, shows

that all the complainants united in filing the bill. Archibald McAllister did not testify to the contrary.

It is insisted, that the McAllisters have no interest in the matter, the notes for the usury having been surrendered and all claim thereon abandoned, and that it is a mere speculation on the part of Valentine to avoid paying a debt, the fund for which, was, by the sale to him, placed in his hands as part of the purchase price of the land.

The doctrine is well established, that the owner of land who has given a usurious mortgage upon it, may sell or mortgage the land to another, generally, and give to such purchaser or mortgagee, by express agreement, the same right to contest the validity of the first mortgage as he had himself. But he may affirm the validity of the usurious mortgage by selling only the equity of redemption in the mortgaged premises, or by selling or mortgaging the land, subject in express terms to the previous mortgage; in which case the purchaser or subsequent mortgagee will be entitled to the equity of redemption merely, and cannot question the validity of the prior mortgage. *Shufelt* v. *Shufelt,* 9 Paige Ch. 137; *Green* v. *Kemp,* 13 Mass. 515; *Spengler* v. *Snapp,* 5 Leigh (Va.) 478; *Ferris* v. *Crawford,* 2 Denio, 595; *Henderson* v. *Bellew, ante,* 322.

Although this be the doctrine, it does not follow that the complainants are not entitled to maintain this bill, notwithstanding the admission of Archibald McAllister that his firm had no interest in the event of the suit. This must be taken to mean a present pecuniary interest, for the prayer of the bill is for an account, and for a surrender to them of their notes.

The McAllisters were still liable on these notes, and if assigned, might give them trouble, and involve them in much expense. At any rate, they were outstanding against them, and they had an undoubted right to file the bill and have an account stated, pay up the balance on the notes, and have the mortgage and notes canceled, and Valentine had a right, with their consent, to be a party complainant, he holding the equity of redemption, and the amount remaining for him to pay, he having purchased subject to the mortgage, the amount due upon that

would be the measure of his liability. He was not perhaps, a necessary party, but we see no objection because he was a party

The court should have required the master to state an account showing what was due on the mortgage, the payments made and when, and on the payment should have directed the notes and mortgage to be surrendered and canceled.

As the cause will have to be remanded, the master should be directed to calculate the interest at ten per cent under the act of 1867, the note and mortgage having been executed prior to the passage of that act.

The decree of the Circuit Court is reversed and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*