Minnie Wilson et al., Appellees, v. Edythe Reed et al., Appellants.

**Gen. No. 35,006.**

Opinion filed June 22, 1931.

NEEDHAM, HUBBARD & MULKS, for appellants.

SCHUYLER, DUNBAR & WEINFELD, for appellees; LAWRENCE NELSON, JR., of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Complainants (owners of certain notes of Nancy DeSpain secured by a trust deed which was executed by Nancy DeSpain on November 29, 1927, conveying to Lawrence Nelson in trust certain premises therein described) filed a bill to foreclose the trust deed. The bill alleged the death of Nancy DeSpain; that Edythe Reed, a defendant, was the owner of the equity of redemption; that there had been a default in the payment of principal note No. 21 for $250 due October 5, 1929, and of interest due on that date for $73.13; that there was a further default in the payment of a special assessment and of interest coupons due June 1, 1929, on a prior trust deed executed to secure bonds aggregating $100,000, and that by reason of these defaults complainants had elected to declare the whole sum due and payable.

Defendant Edythe Reed answered the bill admitting the execution of the notes by Nancy DeSpain for the principal sum of $18,500, denying that Nancy DeSpain was indebted to Lawrence Nelson & Company, to whom the notes and trust deed were delivered. She averred that on November 29, 1927, Nancy DeSpain entered into a contract with Lawrence Nelson & Com-

pany, wherein and whereby Lawrence Nelson & Company agreed to loan and did thereafter advance to and on behalf of Nancy DeSpain the sum of $15,200; that said $15,200 was the entire consideration advanced by Lawrence Nelson & Company for the notes aggregating $18,500; that said notes on their face bore 6½ per cent per annum; that because of the interest exacted being far greater than 7 per cent as allowed by the statute, the agreement was illegal and usurious and complainants were without right to collect any interest.

The cause was put at issue and referred to a master who reported in favor of complainants. Defendants Edythe Reed et al. filed objections, which were overruled by the master and which by order of the chancellor stood as exceptions to the master's report. On the hearing the chancellor overruled these exceptions and entered a decree of foreclosure which defendants seek by this appeal to reverse.

Numerous points with citations of authority are made in the briefs, but the matters argued upon the assignments of error resolve themselves into two, namely, (1) whether the defense of usury was sufficiently pleaded and proved; (2) assuming that it was, whether defendant Edythe Reed is in such position that she will be permitted to interpose the defense. It is of course elementary that in this State the defense of usury must be specially pleaded. *Hibernian Bank Ass'n v. Chicago Title & Trust Co.,* 217 Ill. App. 36; *Harris v. Bernfeld,* 250 Ill. App. 446. Section 7 of chapter 74 (Cahill's St. ch. 74, ¶ 7; Smith-Hurd's Ill. Rev. Stats. 1929, p. 1741) expressly provides:

"The defense of usury shall not be allowed in any suit, unless the person relying upon such defense shall set up the same by plea, or file in the cause a notice in writing, stating that he intends to defend against the contract sued upon or set off, on the ground that the contract is usurious."

Assuming here that the defense of usury was sufficiently raised by the pleadings, it remains to consider whether the evidence sustains that defense.

Edythe Reed did not testify and the only evidence submitted in behalf of her contention in this respect is a written contract entered into between Nancy DeSpain and Lawrence Nelson & Company on November 29, 1927. Lawrence Nelson was called as a witness on behalf of Edythe Reed and testified to the genuineness of the signatures to this contract and that the trust deed and the notes referred to in the agreement are the same as those referred to in the foreclosure proceeding. The agreement provided in substance that Nancy DeSpain agreed to sell to Lawrence Nelson & Company for the sum of $15,200, 40 promissory notes dated November 29, 1927, and that these notes shall be secured by trust deed of even date; that Nancy DeSpain agreed to furnish a mortgage guarantee policy guaranteeing these notes to be a second lien, the cost of the policy to be deducted from the purchase price of the notes; that if there should be any defects in the title or if the mortgage should not be a second mortgage, Nancy DeSpain agreed to reimburse Nelson & Company for reasonable expenses incurred and services rendered; that Nelson & Company, in consideration of the foregoing, agreed to purchase the notes for the sum of $15,200. The agreement recites:

". . . inasmuch as the improvements on said property are not fully paid for, it is hereby agreed that the party of the second part, upon receipt of said notes, trust deed and mortgage guarantee policy, shall disburse the proceeds in payment of unpaid contracts for the construction of the building."

The burden of proof being upon defendant to establish the truth of her defense, we think it can hardly be held that the mere introduction of this contract in evidence and proof that it had some reference to the

notes and the mortgage was sufficient to establish the affirmative defense of usury. The elements necessary to establish that defense are set forth in *Clemens v. Crane,* 234 Ill. 215, and the law seems to be that if an agreement can reasonably be construed as non-usurious, it should be so construed. *Mosier v. Norton,* 83 Ill. 519; *Mumford v. Tolman,* 157 Ill. 258. These cases also establish the rule that the law is diligent to discern any artifice, device or scheme to cover up usury and that oral evidence is always admissible as against the writing of the parties to establish such fact. The bare introduction of this contract in evidence without proof of other facts which, if true, must have been easily available, would hardly seem to establish that defense.

The master found that the conveyance of the premises by Mrs. DeSpain to Mrs. Reed "was in consideration of the sum of ten dollars ($10) and other good and valuable considerations, and that it appears from said conveyance that the said indebtedness secured by said trust deed sought to be foreclosed herein was a part of the consideration for said conveyance, and that said Edythe Reed became liable therefor and cannot now claim that said loan was usurious."

If the finding of the master be construed to mean that Mrs. Reed is personally liable to pay the mortgage of $18,500, we disagree with such finding because there was not sufficient evidence upon which to base it. There was no evidence as to what Mrs. Reed paid for the property other than the recital in the deed and we think the recital is insufficient to hold her personally liable and the decree approving the master's report in this respect is wrong.

The defendant contends that the notes were usurious and that such defense was available to Mrs. Reed. Having set up in her answer the defense of usury, it was incumbent upon Mrs. Reed to prove it.

No evidence was offered by Mrs. Reed nor is there any evidence in the record as to the consideration received by Mrs. DeSpain for the notes and trust deed. The agreement made between Mrs. DeSpain and Lawrence Nelson & Co. above referred to, and by which Mrs. DeSpain agreed to sell and Lawrence Nelson & Co. agreed to buy the $18,500 notes and trust deed for $15,200 by paying out the latter sum towards the construction of a building on the premises, did not prove that the notes and trust deed in suit were delivered by Mrs. DeSpain to Lawrence Nelson & Co., nor did it prove or tend to prove that Lawrence Nelson & Co. had paid out for Mrs. DeSpain the $15,200, or any part thereof.

The notes and trust deed were offered in evidence and there was testimony to the effect that complainant, Minnie E. Wilson, owned notes of the face value of $5,000, Lawrence Nelson & Co. notes aggregating $6,500, and Ethel K. Schuber notes aggregating $2,000. Whether these notes were any or all of them delivered by Mrs. DeSpain to Lawrence Nelson & Co., or how they came to be owned by the three complainants, is not shown by any evidence.

Complainants, however, seem to rely upon other grounds, and assuming that the evidence was sufficient to establish usury they contend that the defense of usury is personal to the debtor and to those in privity with him. It has been so held in several cases, including *Union Nat. Bank v. International Bank*, 123 Ill. 510, and *Hibernian Banking Ass'n v. Davis,* 295 Ill. 537. They assert the unquestioned rule (which is a necessary corollary) that the mortgage debtor may affirm the usury and thus deprive his grantee of the right to plead it, and they argue that Edythe Reed does not have the right to interpose the defense of usury of which Nancy DeSpain might have availed herself. The evidence in the record bearing upon this contention also is somewhat meager. The uncontradicted evi-

dence tends to show that on February 27, 1928, Nancy DeSpain made, executed and delivered a warranty deed providing:

". . . for and in consideration of the sum of Ten Dollars and other good and valuable consideration in hand paid, Conveys and Warrants to Edythe Reed of the City of Highland Park, County of Lake and State of Illinois, the following described Real Estate, to-wit:

. . . . . . . .

"Subject to a Trust Deed to Chicago Title & Trust Company, Trustee, dated June 1, 1927, recorded as Document No. 9674241, given to secure bonds aggregating $100,000.00 and to a Trust Deed to Lawrence Nelson, Trustee, dated November 29, 1927, recorded as Document No. 9855697, given to secure notes aggregating $18,500.00."

Complainants contend that by selling the equity of redemption and by expressly providing that the sale was made subject to the mortgage, the mortgagor affirmed the usury and that her grantee cannot now question the validity of the mortgage in that respect. The earliest authority relied upon is *Henderson v. Bellew,* 45 Ill. 322. In that case it appeared that Robert Bellew executed a deed of trust on April 4, 1863, to Henderson to secure Bellew's note for $850, drawing interest at 10 per cent. The land conveyed was sold to Patrick Bellew, who took a deed from Robert containing a proviso that it was subject to the trust deed. Upon default in payment of the note the trustee was about to sell when Patrick filed his bill to enjoin the sale upon the ground that when the note was given, although on its face it drew 10 per cent interest, there was an agreement between the maker and the holder that it should in fact draw 13 per cent and that interest had been paid at that rate up to February 1, 1865. The facts as alleged were proved upon a hearing and an injunction was granted upon the payment of $68.50. The opinion of the court states that the question of

usury in a court of equity may only be raised on equitable terms but that independently of this principle Patrick had no more concern with the usury paid by Robert than he would have had with a gift of the same amount which Robert might have chosen to make to Henderson; that Henderson "claims simply to enforce the deed of trust according to its terms, and the complainant took the land expressly subject to this deed." The opinion of the court also states:

"There is some discrepancy in the authorities as to how far other persons besides the debtor may raise the question of usury. We hold the better rule to be, that, if, in a sale of land subject to a mortgage tainted with usury, the purchaser is informed of the fact of usury by the vendor, and authorized by him to set it up as against the mortgage, the abatement to which the mortgage would be subject on account of usury thus constituting an element in the price of the land, the purchaser in such circumstances would be at liberty to raise the question.

"But if, as in the present case, *the mortgage on its face draws only legal interest,* and the purchaser buys from the mortgagor subject to the mortgage as it stands, no reference being had in the price to any hidden taint of usury, the presumption is that the vendor desires the mortgage paid according to its terms, and it is not for the purchaser who has bought the land expressly subject to the mortgage, and who has probably been allowed for it in the purchase money, to undertake to evade its full payment by setting up usury." The opinion further states that by selling expressly subject to the usury, the mortgagor affirmed it. *Shufelt v. Shufelt,* 9 Paige (N. Y.) 137, 145; *Post v. Dart & Bank of Utica,* 8 Paige (N. Y.) 639, 641; *Green v. Kemp,* 13 Mass. 515; *Reading v. Weston,* 7 Conn. 413; *Post v. Bank of Utica,* 7 Hill (N. Y.) 391, 406; *DeWolf v. Johnson,* 10 Wheat. (U. S.) 367; *Valentine v. Fish,* 45 Ill. 462.

In *Maher v. Lanfrom*, 86 Ill. 513, Hugh Maher made a trust deed to secure a loan held to be usurious. He then conveyed the premises to one Walton for the use of Mrs. Maher, the consideration being money loaned by Mrs. Maher—a gift of former years from her husband. Walton surrendered the deed, and Hugh Maher then conveyed the premises to James Roberts by a warranty deed for the express consideration of $25,000. Roberts quitclaimed and released the premises to Mrs. Maher, who was his sister, the actual consideration being the $50,000 previously loaned by Mrs. Maher to her husband. In defending a bill to foreclose Mrs. Maher pleaded usury, and the court held that having taken without any actual notice or knowledge of the incumbrances and since nothing had been deducted from the price of the land when she purchased on account of the mortgage, she therefore took not by agreement but by operation of law, and that the obligation could only be imposed as it legally existed. The court said:

"The property was conveyed to Roberts, by deed, with full covenants, and as it was to be by him conveyed to Mrs. Maher, it was the same, virtually, as if made to her by a mortgagor competent to convey. It seems to be the doctrine generally recognized that if a party purchases from a mortgagor without any deduction from the price on account of the incumbrance, the grantee thereby becomes invested with the right to interpose the same defenses as might have been made by the mortgagor. In such a case the conveyance amounts to an authority to the purchaser to interpose the defense of usury. See *Dix v. VanWyck*, 2 Hill, 522; *Post v. Dart*, 8 Paige 639; *Shufelt v. Shufelt*, 9 Paige 137; *Brolasky v. Miller*, 1 Stockt. 807; *Daub v. Barnes*, 1 Md. Ch. 127; *Greene v. Tyler*, 39 Penn. 361; *Newman v. Kirshaw*, 10 Wis. 333; *Berdan v. Sedgwick*, 40 Barb. 359—opinion by Allen, one of the judges of the present Court of Appeals."

In *Essley v. Sloan*, 116 Ill. 391, Essley borrowed $2,000, giving his note for that amount secured by a trust deed. He afterwards conveyed the land to one Drury subject to the trust deed, and an indebtedness from Essley to Drury and Burgett was satisfied by the transfer. At that time the amount of the claims and incumbrances was computed to be $7.68 per acre for the land. Drury conveyed the land to Bigelow for $7,300 subject to incumbrances, naming them, among which was the loan of $2,000. Bigelow quit-claimed to Ballard subject to incumbrances. Sloan, the assignee of the note, advertised the land for sale under the trust deed. A bill was then filed by Ballard and Essley to enjoin the sale, alleging usurious interest had been paid. There was a conflict in the evidence as to whether Drury expressly agreed to pay the incumbrances, but it was agreed that all took the land subject to the incumbrances and it was so understood and agreed at the time they purchased. The court said that assuming usury, complainants could not avail themselves of that defense. It also said:

"Essley had the right, if he chose, to affirm the validity of his usurious contract with McKinney, and having conveyed only the equity of redemption, will be held to have done so. Drury and his grantees purchased subject to the incumbrance, with full knowledge thereof, and it in no way concerns them whether, as between Essley and McKinney, the contract was tainted with usury or not. If Essley protected the incumbrance, and provided for its payment by taking that much less from Drury for his land, thereby in effect leaving enough of the consideration of his sale in Drury's hands to pay off the lien, and Drury so purchased, and paid only the excess he agreed to pay over and above what the incumbrance was understood to be, he is in nowise injured, and neither he nor those claiming through or under him can be heard to complain. *Henderson v. Bellew*, 45 Ill. 322; *Valentine*

*v. Fish,* 45 id. 462; *Maher v. Lanfrom,* 86 id. 513; *Darst v. Bates,* 95 id. 493; *Sands v. Church,* 6 N. Y. 347.''

This authority would seem to be conclusive were it not for the later case of *Crawford v. Nimmons,* 180 Ill. 143, on which defendant exclusively relies. For that reason we have given it most careful consideration. The facts would appear to be as follows:

Jesse A. Neal owned land which he mortgaged to secure an indebtedness represented by a note of $2,000 given to John Nimmons. February 28, 1898, Neal conveyed the land by warranty deed to Crawford for an expressed consideration of $3500. The deed contained this clause: ''Subject to a certain mortgage indebtedness of $2000 and interest thereon, dated January 2, 1894.'' Nimmons filed a bill to foreclose against Neal and his wife and Crawford, but dismissed the bill as to Neal and wife, leaving Crawford the sole defendant. The bill alleged that Neal and wife conveyed the premises for the agreed price of $3,500; that Crawford retained $2,500 of the purchase price to pay the mortgage, and that he became liable to Nimmons for the amount of the mortgage. The answer set up the defense of usury, denied that there was any deduction from the purchase price of the land on account of the incumbrance or that Crawford retained $2,500 therefrom for the purpose of paying the mortgage indebtedness, and alleged an agreement at the time of the purchase that Crawford should be subrogated to the rights of his grantor and should have the right to interpose the defense of usury.

Upon the hearing the only evidence offered was the note and mortgage and the conveyance from Neal and wife to Crawford with proof of signatures and delivery. The decree ordered foreclosure and sale to satisfy the full amount due of $2,483.75. Upon appeal to the Appellate Court the decree was affirmed. (*Crawford v. Nimmons,* 80 Ill. App. 543.) There was a further appeal to the Supreme Court. The note

upon its face was usurious, being for 8 per cent. The bill alleged that there was an agreement that the interest should be only 7 per cent, but no proof was offered upon this point. In the trial court defendant was not permitted to present the defense of usury. For that reason the decree was reversed and the cause remanded.

That case is not at all controlling here. In the first place, the usury there appeared upon the face of the note. Evidence of an express agreement with defendant's grantor that defendant might interpose the defense of usury was not permitted, and for that error the decree was reversed. While the language of the opinions is not altogether harmonious, the later authorities seem to interpret the cases we have reviewed as holding that the right of defense of usury is ordinarily a personal one; that the right of a grantee of the mortgagor of property to make the defense rests upon a fiction; that in the absence of any agreement to the contrary there is implied authority to the grantee to make the defense and that this defense has become a part of the substantive law of the State; that the defense might be waived; that it is waived where the mortgagor, selling property securing a usurious loan, deducts the amount of the obligation from the purchase price; that if the grantee assumes and agrees to pay the indebtedness, there can be no question as to the waiver. *Schiele v. Anderson,* 252 Ill. App. 390.

In *Franklin County Building & Loan Ass'n v. Blood,* 255 Ill. App. 175, it is expressly held that where property subject to a mortgage was conveyed, it need not be expressly stated in the deed that the mortgage was a part of the consideration if it can be reasonably inferred that the incumbrance is a part of the consideration for the purchase price, and that whether it was so agreed in express terms is not

material; that the purchaser took the property subject to the incumbrance "with full knowledge thereof, and it in no way concerns him as to whether the contract was tainted with usury."

In the instant case the only consideration named is $10, which practically amounts to stating a nominal consideration. In view of the prior incumbrances, both of which were specifically named and described, it must be apparent that the incumbrances were a part of the consideration for the property conveyed and that the purchaser of the equity took with knowledge of them. Under these circumstances it must be held that the defense of usury was waived and that Edythe Reed as grantee of the equity may not interpose the same.

The decree will be modified in so far as it finds Edythe Reed personally liable, and as modified will be affirmed.

*Affirmed as modified.*