Lottie Greengard, Appellant, v. Louis Katz et al., Appellees.

Gen. No. 36,336.

Opinion filed April 10, 1933.

HARRY Z. and BERNARD PEREL, for appellant; HARRY Z. PEREL and ABRAHAM H. MALLER, of counsel.

PINES, MORSE & STEIN and ARTHUR P. FEIGEN, for appellees; ALVIN E. STEIN, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Complainant brought a suit to foreclose a trust deed executed by Louis Katz and his wife, on a 99-year

leasehold given to secure their promissory notes in the aggregate sum of $65,000, some of which notes had been paid. The defense interposed was that the transaction was usurious in that the defendants had received only $50,000 for the notes aggregating $65,000. The case was referred to a master who found that the defense of usury was unavailable, and recommended a decree of foreclosure as prayed for in the bill. The amount he found to be due, which included principal, interest, insurance premiums and costs, was $44,635.01. Exceptions to the master's report were sustained, the chancellor holding that the defense could be interposed that complainant was entitled to receive only the $50,000 in payment of the 53 notes without interest. There was also included in the decree insurance premiums advanced by complainant, interest thereon, aggregating $1,965.87, and $750 solicitors' fees, a total of $5,896.32. A decree of foreclosure was entered for this amount, and complainant appeals.

The record discloses that October 1, 1924, defendants Louis Katz and Rose Katz, his wife, leased certain premises from the board of education of the City of Chicago for 99 years, and being desirous of improving the premises with a garage, on April 15, 1925, executed their 53 promissory notes of that date in the aggregate sum of $65,000. Notes Nos. 1 to 51, both inclusive, were each in the sum of $625, note No. 52 was for $16,550, and note No. 53 was for $16,575; note No. 1 being due January 15, 1926, and one of the notes Nos. 2 to 51 became due each month thereafter. Notes Nos. 52 and 53 were due five years after their date, and all bore interest at the rate of 7 per cent per annum. The loan was made through Marks & Co., who disbursed the money in payment for the garage, and it is undisputed that but $50,000 was paid out.

When the building was completed it was conducted by Katz and his wife as the "Prairie Garage." May 19,

1925, Katz and his wife assigned one-half of their interest in the 99-year lease to Joseph Einhorn, the father of Mrs. Katz. April 21, 1926, Louis Katz and his wife, Joseph Einhorn and his wife, and Edward A. Schroeder executed and sent to the Secretary of State proper documents to incorporate the business then being conducted on the premises as the ''Prairie Garage.'' Louis Katz subscribed for 187 shares, Rose Katz, his wife, 187 shares, Joseph Einhorn, 187 shares, Lena, his wife, 187 shares, and Edward A. Schroeder, 2 shares, a total of 750 shares, the par value of which was $100 a share or a total of $75,000. There was no preferred stock and the capital stock was all to be paid for by the property and business then being conducted as the ''Prairie Garage,'' including the unexpired term of the 99-year lease, the machinery, fixtures, stock, furniture and equipment, all of which was valued at $75,000. And it was stated that the property to be turned in in payment of the $75,000 par value stock was subject to an incumbrance of $62,500, which the evidence shows was the balance due and unpaid of the $65,000 notes. Two days afterward the Secretary of State issued a charter to the ''Prairie Garage, Inc.,'' which was then created a legal corporation under that name. On the 21st of April, 1926, Katz, his wife, and Einhorn assigned all their right, title and interest in the 99-year leasehold to ''The Prairie Garage, Inc., an Illinois corporation.'' Seven days thereafter, April 28, 1926, pursuant to a resolution passed the day before by the board of directors of the Prairie Garage, Inc., the Prairie Garage, Inc., by Edward A. Schroeder, its president, and Joseph Einhorn, its secretary, accepted such assignment. Afterward the board of education of the City of Chicago consented to the assignment of the lease to the Prairie Garage, Inc.

The evidence further shows that immediately after the certificate for the two shares of stock was issued to

Edward A. Schroeder, he indorsed and turned it back to the corporation, and the evidence is further to the effect that Louis Katz and the other parties, who had conducted the Prairie Garage before it was incorporated, continued to operate it after the incorporation.

It is undisputed that the individuals who operated the Prairie Garage and the Prairie Garage, Inc., paid on account of the $65,000 notes, for which but $50,000 was received, $49,362.05, which latter sum included insurance premiums of $2,542.50. The notes aggregating $65,000 are admittedly tainted with usury, and the question is, whether the defendant, the Prairie Garage, Inc., a corporation, can avail itself of this defense. Complainant takes the position that it cannot for two reasons: (1) that the defense of usury is personal to the Katzes, the mortgagors, and since the evidence shows that after the Katzes executed the notes and trust deed, they and Einhorn conveyed the property to the Prairie Garage, Inc., subject to the amount then due and owing on the mortgaged notes, namely, $62,500, the defense of usury was thereby waived by the Katzes, the mortgagors. And since complainant dismissed the suit as to the Katzes, the defense of usury cannot be invoked by the garage corporation; and (2) that in no event can a corporation interpose the defense of usury because the statute expressly prohibits it.

As to the first contention, it is argued that in the statement filed by the incorporators with the Secretary of State, they swore and acknowledged that the $75,000 par value of stock was to be paid in full by conveying the property and business of the incorporators, then being operated as the Prairie Garage, including the 99-year leasehold interest, to the corporation, and that such property was then incumbered for $62,500, and these facts show that the property was appraised at $137,500—$75,000 plus $62,500; and

that this conduct on the part of the incorporators was a recognition that the mortgage was legal and valid, and in support of this contention the cases of *Valentine v. Fish*, 45 Ill. 462; *Crawford v. Nimmons*, 180 Ill. 143; *Wilson v. Reed*, 262 Ill. App. 230, and other cases are cited. In the *Valentine* case the court said, p. 468: "The doctrine is well established, that the owner of land who has given a usurious mortgage upon it, may sell or mortgage the land to another, generally, and give to such purchaser or mortgagee, by express agreement, the same right to contest the validity of the first mortgage as he had himself. But he may affirm the validity of the usurious mortgage by selling only the equity of redemption in the mortgaged premises, or by selling or mortgaging the land, subject in express terms to the previous mortgage; in which case the purchaser or subsequent mortgagee will be entitled to the equity of redemption merely, and cannot question the validity of the prior mortgage."

In the *Crawford* case, *supra* (180 Ill. 143), it was held that the defense of usury is personal to the mortgagor and those in privity with him, but his grantee may make the defense in the absence of any agreement that he is to pay the incumbrance with usury. In that case the owner of property executed a mortgage to secure his note for $2,000 with interest at eight per cent per annum. Afterward the mortgagor conveyed the property by warranty deed for an express consideration of $3,500, "subject to a certain mortgage indebtedness of $2,000 and interest thereon." Afterward a bill to foreclose the mortgage was filed against the mortgagor and his grantee, but the bill was dismissed as to the mortgagor, leaving the grantee as the sole defendant. The bill as amended alleged that the mortgagor conveyed the premises in question to his grantee for the agreed price of $3,500; that the grantee retained $2,500 of the purchase price to pay the mort-

gage. The answer denied any deduction from the purchase price on account of the incumbrance or that the grantee retained $2,500 or any sum from the purchase price for the purpose of paying off the mortgage; and further set up the defense of usury on the face of the note, which bore eight per cent interest while the statute allowed but seven per cent. There was no evidence as to the amount of the consideration except the recital in the deed. The trial court held that on account of this recital this defense could not be made. The Supreme Court held this ruling was erroneous, and said, p. 147: "In considering the question as to what shall be regarded as an affirmance by the mortgagor of the amount and validity of the mortgage debt, it is, perhaps, not easy to reconcile all the expressions used in the different opinions. It has sometimes been said, in substance, that if the mortgagor sells the land subject, in express terms, to a previous mortgage, the purchaser cannot question its validity; but when the cases are examined it will be found that additional facts have been required to prevent the grantee from making the defense. In all the cases where it has been held that the grantee cannot question the validity of the mortgage, he has purchased the property on the basis of a clear title, at an agreed price, and has assumed to pay the mortgage debt as a part of the consideration, or the amount of such debt has been deducted from the purchase price of the land on the basis of such clear and complete title. In such cases the grantee has paid to his grantor that part of the purchase price representing the estimated value of the equity of redemption and has reserved the amount of the incumbrance, which he has either agreed to apply in satisfaction of it or which he has held to protect himself against the incumbrance by exercising his option to pay it and save the property or to let it go under the incumbrance. The expression noted above was used in *Valentine v.*

*Fish,* 45 Ill. 462, but in that case the defense was allowed, although there were four successive conveyances of the mortgaged premises, in which the deeds were made subject, in express terms, to the usurious mortgage. In *Maher v. Lanfrom, supra,* the case of *Valentine v. Fish* was discussed, and it was said that although the conveyances were all in terms subject to the mortgage, the defense of usury was allowed to the mortgagor and the remote grantee. It was not considered that there was any estoppel from the mere fact that the conveyances were made subject to the mortgage.''

Under the law as announced in the *Crawford* case, we are of opinion that the mere recital in the statement filed by the incorporators, which stated that all of the capital stock was to be paid for by conveying the property and business known as the Prairie Garage to the corporation, and that the property was subject to an incumbrance of $62,500 did not preclude the defendant, the Prairie Garage corporation, the assignee of the mortgagors, from interposing the defense of usury. There was some oral evidence offered on the question whether the property conveyed by the incorporators to the corporation in payment of the $75,000 stock, was appraised at $137,500, as tending to show that the $62,500 incumbrance on the property was included in the appraisal; but we think this evidence fails to show that any specific appraisal was made or any specific value placed upon the property. Complainant contends that this oral evidence tends to prove that the property conveyed in payment of the stock was of the value of $150,800. We will not stop to analyze the argument of counsel for complainant in this respect because we are of the opinion it would serve no useful purpose. From a careful consideration of all the evidence in the record, we think there was no specific value placed on the property by the incorporators. But we

are further of the opinion that whatever view may be taken of the law, as to whether the defense of usury may be interposed by the grantee of a mortgagor, where the conveyance is made subject to the mortgage, it is of no avail here because there was, in fact, no sale by the mortgagors to the defendant, the Prairie Garage, Inc. The parties who owned the 99-year lease and the garage, and who were operating it, merely changed the form of the interest which they had from a personal interest in the property to a corresponding proportionate interest in the same property in the corporation. The undisputed evidence is that the Katzes and Einhorns agreed among themselves to incorporate for the purpose of continuing the business of conducting the garage, and the assets of the business were transferred to the corporation, each of the persons receiving his or her aliquot part of the capital stock of the business which was transferred to the corporation. As we said in *Chicago Smelting & Refining Corp. v. Sullivan*, 246 Ill. App. 538, quoting from *Andres v. Morgan*, 62 Ohio St. 236: "The members of the partnership may be said to have simply put on a new coat." See also *Acorn Lumber Co. v. Friedlander Box Co.*, 240 Ill. App. 425. We are also of the opinion that the defendant, the Prairie Garage, Inc., is not precluded by sections 5 and 6 of chapter 74, Cahill's 1931 Revised Statutes, from interposing the defense of usury. Section 4, ch. 74, provides, in substance, that in written contracts persons may agree upon seven per cent interest, but that with respect to moneys loaned to corporations they may agree upon any rate of interest. By section 5 it is provided, in substance, that no person or corporation shall directly or indirectly receive a greater rate of interest than seven per cent except from a corporation; and by section 6, that if any person or corporation shall contract to receive, except from a corporation, a greater rate of interest than

seven per cent upon any written or oral contract, such person or corporation shall forfeit the whole of the interest, and that all contracts executed after the statute shall take effect ''except contracts in which a corporation shall be the obligor . . . shall be deemed usurious, and only the principal sum due thereon shall be recoverable.'' We think these sections which provide that a contract may be made with a corporation whereby the corporation may agree to pay more than seven per cent, does not apply to the instant case, because the contract here, viz., the promissory notes, was not made by the corporation, the Prairie Garage, but by the Katzes, and the statute provides that if such contract called for more than seven per cent, all of the interest should be forfeited. This was a defense that could be made by the Katzes and is equally available to their assignee, the Prairie Garage. This is the holding in the case of *Merchants Exchange Nat. Bank of New York City v. Commercial Warehouse Co. of New York,* 49 N. Y. 635.

The defendant, Prairie Garage, Inc., has assigned cross-errors, claiming that the court should have decreed the dismissal of the bill because there was no default at the time the bill was filed, for the reason that when all the payments and the insurance premiums advanced were credited, there remained but $3,180.45 due; that the bill was filed November 23, 1929, and at that time notes numbered 52 and 53 for $16,550 and $16,575 respectively, making a total of $33,125, were not due and did not become due until April 15, 1930. And applying the payments made, as is done by the decree, after eliminating the usury, these two notes, although not due by their terms, were paid, except $3,180.45. The decree was entered July 29, 1932. At that time all of the indebtedness evidenced by the notes was overdue. The decree specifically finds that on August 15, 1928, 1929, and 1930, complainant ad-

vanced $1,657 for insurance premiums. So it appears that before the bill was filed there was a default in payment of insurance which complainant advanced in 1928. In a suit in equity the rights of the parties are determined as of the time the decree is entered, as the equities of the case may require, and not at the time the suit is instituted as is the rule in actions of law. *Baker v. Salzenstein,* 314 Ill. 226. The court did not err in refusing to dismiss the bill.

A further point is made by complainant that the court erred in reducing the fees of complainant's solicitors from $3,500, as recommended by the master, to $750, as provided in the decree. There is testimony in the record to the effect that $3,500 would be a usual, reasonable and customary charge for the work performed by complainant's solicitors, but on cross-examination of the witnesses it was admitted that if the amount involved was but $5,000, such services would be reasonably worth from $750 to $1,000. There is no contest in this case except on the question of the availability of the defense of usury, so it appears that a great part of the services rendered by complainant's solicitors was unwarranted. *Thompson v. Carins,* 294 Ill. 270. Upon a consideration of the record on this point, we are unable to say that the finding of the chancellor was so inadequate as to warrant interference on our part.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

McSurely, P. J., and Matchett, J., concur.